# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1928

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Wesley T. Frasher, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  November 16, 2010
Filed:  February 16, 2011

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Wesley Frasher entered a conditional plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  He appeals from the district court's[1] denial of his motion to suppress evidence, contending that his Fourth Amendment rights were violated when police officers initiated a traffic stop without reasonable suspicion and unlawfully searched the vehicle he had been driving.  We affirm.

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

## I. Background

On March 25, 2008, City of Independence, Missouri, Police Officer Dan Fries investigated a domestic disturbance involving Ashli Countryman. During the course of his investigation, Fries encountered an individual with an outstanding warrant and placed him under arrest. He also learned that Countryman had been picked up by a white, four-door vehicle, possibly a Ford Crown Victoria. He saw a vehicle that matched the description and observed the vehicle driving erratically, which constituted a traffic violation. Because he was transporting the arrestee in his car, Fries asked Officer Matthew Tilley to stop the vehicle. At that time, Tilley was a new officer, and Fries was one of his prior field training officers.

Tilley activated his dash-cam video, confirmed that it was the correct vehicle, and followed it into a restaurant parking lot. Frasher, the driver, and Countryman, the passenger, exited the vehicle. Tilley pulled in behind the parked vehicle and activated his emergency lights, initiating a traffic stop. He inquired how Frasher and Countryman were involved with the earlier domestic disturbance. They told him that the officers investigating the disturbance had said that Countryman could leave and that she had called Frasher to pick her up. Tilley asked Frasher and Countryman for identification. Frasher told Tilley that he had an outstanding traffic warrant. After confirming the warrant, Tilley placed Frasher under arrest.

Tilley mentioned the possibility of granting Frasher a tow waiver to allow the vehicle to remain in the restaurant parking lot. A tow waiver would have required prior approval of the restaurant, as well as that of a police supervisor or senior officer because of Tilley's new-officer status. Tilley allowed Frasher to call his father to pick up the car. Countryman did not have any identification with her and thus could not take possession of the vehicle.

Approximately ten minutes later, Fries arrived at the scene and asked Tilley if he had searched the car. Tilley replied that he had not. Fries offered to help Tilley with the search and the tow report. Tilley did not tell Fries that he had discussed the tow waiver with Frasher.

Standard protocol authorized the vehicle to be towed after Frasher's arrest because there was no responsible party that could take immediate custody of it. It also required that the officers conduct an inventory search on the seized vehicle. When Fries asked about the search and tow, Tilley assumed that he should have followed standard protocol and thus abandoned the idea of a tow waiver. Fries initiated the procedure for towing the vehicle and performing the inventory search. Pursuant to the search, Fries and Tilley recovered two firearms and methamphetamine from Frasher's vehicle. Tilley testified that prior to the search, he had no reason to believe there were guns or drugs inside the vehicle. During the search, another officer picked up Frasher and took him to jail. Frasher's father did not appear during the course of the inventory search. He testified that just as he was getting ready to leave to get the car, his son called to say that he was at the jail and that the car had been towed.

Frasher was charged with being a felon in possession of firearms. He moved to suppress the evidence seized from his vehicle, alleging that the stop and the subsequent search of the vehicle violated his Fourth Amendment rights. In addition to producing evidence establishing the foregoing facts, the government introduced the Independence Police General Order on Abandoned Property and Police Towing Policy, which authorizes officers to tow unattended vehicles left on private property when there is no responsible party able to take immediate control of the vehicle, and Independence General Order PD95-033, which requires police officers to conduct an inventory search on any vehicle they seize. The magistrate judge recommended that the motion be denied because probable cause supported the traffic stop and the search of the car was a valid inventory search. The district court adopted the report and recommendation.

## II. Discussion

Frasher asserts that his motion to suppress should have been granted. He argues that the police lacked reasonable suspicion to conduct an investigative stop and that the search could not be justified as an inventory search or a search incident to arrest. On appeal of a motion to suppress, we review the district court's legal conclusions *de novo* and factual findings for clear error. United States v. Dinwiddie, 618 F.3d 821, 831 (8th Cir. 2010).

### A. Traffic Stop

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 809-10 (1996). To constitute a reasonable seizure, a traffic stop must be supported by, at a minimum, "a reasonable, articulable suspicion that criminal activity" is occurring. United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement. United States v. Ehrmann, 421 F.3d 774, 780 (8th Cir. 2005). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009) (citation and quotations omitted). Similarly, it is irrelevant that the officer would have ignored the violation but for his ulterior motive. Id. When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication. See United States v. Morales, 238 F.3d 952, 954 (8th Cir. 2001).

Frasher argues that the officers stopped his vehicle without reasonable suspicion because their only purpose in stopping his car was to identify the driver who had picked up Countryman. He points out that no traffic offense was recorded by Tilley's dash-cam video and that he was later arrested for another reason.

The record supports the finding that a traffic offense occurred and that probable cause supported the traffic stop. At the suppression hearing, Fries testified that he observed Frasher's vehicle "switching lanes erratically and at one point it went off the road slightly." Tilley testified that driving erratically, *i.e.*, in a "careless and imprudent" manner, constitutes a traffic violation in the City of Independence. Although the dash-cam video did not record Frasher's erratic driving, it had not begun recording and was not even in Fries's vehicle. The recording does not contradict Fries's earlier observation but rather shows that Frasher did not continue to drive in a careless and imprudent manner. The dash-cam video recorded Fries's communication to Tilley that he had observed Frasher driving in a careless and imprudent manner and Tilley's subsequent traffic stop of Frasher's vehicle. Fries's observation of the traffic violation gave him probable cause to stop the vehicle, and his subjective intent to learn the driver's identity is irrelevant.

## B. Inventory Search

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 129 S. Ct. 1710, 1716 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) (footnote omitted)). The policies supporting the warrant requirement including the concept of probable cause are not implicated in an inventory search. Colorado v. Bertine, 479 U.S. 367, 371 (1987). Inventory searches are one of the well-defined exceptions to the warrant requirement of the Fourth Amendment. Id. The routine practice of securing and inventorying a vehicle's contents is a "response to three

distinct needs: the protection of the owner's property while it remains in police custody, the protection [of] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." South Dakota v. Opperman, 428 U.S. 364, 369 (1976) (internal citations omitted). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." United States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005). Inventory searches that are "conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." Id. Standardized police procedures are necessary to "ensure that the search is not merely a ruse for general rummaging in order to discover incriminating evidence." Id. (internal quotations and citation omitted).

Frasher argues that Fries had the vehicle towed so that he could search it in the absence of probable cause. Cf. United States v. Sims, 424 F.3d 691, 693 (8th Cir. 2005) ("A seizure based solely on suspicion that the vehicle constitutes or contains evidence of criminal activity must be supported by probable cause."). Independence Police Department towing policy authorizes police officers to seize a vehicle when "the officer takes the driver of a vehicle into custody, and such vehicle would thereby be left unattended on private property to which it is not registered and the owner or other responsible party, not impaired by either alcohol or drugs, cannot take immediate custody of it." The policy requires an inventory search for all vehicles seized by police officers.

The record supports the determination that the search of the vehicle was permissible as an inventory search. Frasher's vehicle was parked in a restaurant parking lot, and there was no responsible person able to take immediate custody of the vehicle. Standard protocol was to tow Frasher's vehicle. Fries arrived after Frasher's arrest and did not know that Tilley had discussed a tow waiver with him. Fries offered to help with the search and the tow waiver to comply with the standard police

procedures; he did not decide to tow the vehicle solely to search the vehicle for incriminating evidence. Even after Frasher called his father, Frasher had no right to a tow waiver, and Tilley could not grant the waiver without a supervisor's approval. Tilley did not tell Fries about the tow waiver because he determined that he should have followed standard protocol. We conclude that the district court did not clearly err in adopting the magistrate judge's finding that the search was conducted pursuant to standard police procedure and not for the sole purpose of investigation.

## C. Search Incident to Arrest

Frasher's argument that the search was not proper under <u>Arizona v. Gant</u> is misplaced because the search was not conducted incident to arrest, but rather was an inventory search. Frasher asserts that <u>Gant</u>'s reasoning undermines the inventory search exception. However, <u>Gant</u> acknowledges that a search of a vehicle may still be allowed if it is shown that another warrant exception applies. 129 S. Ct. at 1724.

## III. Conclusion

The order denying the motion to suppress is affirmed.

_____