# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2853

_____

United States of America

*Plaintiff - Appellee*

v.

John L. Arrocha

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 15, 2013
Filed: May 8, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

John Arrocha was charged with being a felon in possession of a handgun seized during a warrantless search of his vehicle, and body armor seized in a subsequent warrant search of his home. See 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (a)(7), 931(a)(1), and 921(a)(35). He entered a conditional plea of guilty to both charges

after the district court[1] denied his motion to suppress the handgun. Arrocha appeals, arguing the court erred in concluding the handgun was seized during a valid inventory search of his vehicle. Reviewing the factual findings underlying the suppression ruling for clear error, and the court's legal conclusions *de novo*, we affirm. United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011) (standard of review).

## I.

Liberty, Missouri, Police Officers Dan King and Wendi Mason and Arrocha testified at the suppression hearing. We summarize their testimony consistent with the district court's findings of fact. On June 14, 2010, King and his partner and Mason were separately dispatched to a local QuikTrip after several callers reported a disturbance involving a black male, a sports utility vehicle (SUV), and a gun. Arriving first, Officer Mason approached a man -- later identified as Arrocha -- matching the reported description and standing next to a Chevrolet Tahoe SUV. Arrocha told Officer Mason he was upset after arguing with QuikTrip employees who he believed discriminated against him when he attempted to pay for a drink and they refused to take his money. As Officer Mason talked with Arrocha, Officer King arrived with his partner, who soon did a computer check that revealed an active Kansas City warrant for Arrocha's arrest on a harassment charge. Arrocha was arrested based on the warrant, handcuffed, and patted down for weapons.

The officers then turned their attention to the SUV, which was properly parked in the QuikTrip parking lot, locked but with the windows down. Officer Mason testified that Arrocha told her he had the keys and asked her to roll up the windows. As she proceeded to do so, Officer King said the vehicle would be impounded and

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

towed and told Officer Mason to perform an inventory search. Officer Mason unlocked the SUV and, during her search, found a handgun under a rag in the map compartment of the driver's side door.

At the suppression hearing, the government also introduced Procedural Instruction 027, part of the Liberty Police Department Operations Manual, establishing "guidelines and procedures" for the towing of abandoned vehicles. It provides that any unattended vehicle may be "removed . . . from public or private property as provided in section 304.155 and 304.157" of the Missouri Revised Statutes, two sections of the Traffic Regulations Chapter. Section 304.155 prescribes when local police may authorize a towing company to remove an abandoned vehicle on public property. It expressly provides that a vehicle may be towed if the person operating the vehicle is arrested and taken into custody and is unable to arrange for the vehicle's timely removal. § 304.155.1(5). Section 304.157 prescribes when a vehicle abandoned on private property may be towed "at the request of the person in possession of the real property." Consistent with that focus, § 304.157 does not have a subpart dealing with custodial arrests. However, Section IV.B. of the Liberty Procedural Instruction provides that its procedures generally apply "[s]ubsequent to arrests . . . if the suspect's vehicle is to be towed from the scene of the arrest." And Section IV.E. provides that a police officer "may respond to tow a vehicle or vessel from private property [if] . . . (2) In the judgment of the officer, the abandoned property . . . unreasonably interferes with the use of the real property by the person in possession," a provision consistent with Mo. Rev. Stat. § 304.157.1(2).

Officer King testified that he made the decision to tow the SUV because Arrocha was under arrest and would not "give us the name of somebody we could call to come and pick up the vehicle." "He was very difficult. We had no other choice but to tow the vehicle." On cross examination, when defense counsel noted that the SUV was properly parked on private property, Officer King further explained:

[The SUV was] parked directly in front of QuikTrip. They have a lot [of] foot traffic, very busy. We have an agreement with QuikTrip that -- to tow vehicles when we arrest somebody. So, at that point that is when we decided to tow it and that's when the inventory was conducted.

Later, on recross, Officer King reiterated:

Q. And the vehicle . . . you're saying even though it's parked in a space, it's obstructing QuikTrip's business?

A. Yes. If nobody can pick it up and it's left unattended in a parking space that's -- they have limited parking and they have a high volume of customers in and out of that QuikTrip, so, yes . . . it was a judgment call on our part to tow it because we believed it was an interference with their business.

Officer Mason likewise testified, "We would not normally leave a vehicle in the parking lot of the QuikTrip if we were arresting somebody out of it."

Officers King and Mason both testified that they gave Arrocha the opportunity to give them the name of someone who could come pick up the SUV. Arrocha told them it was his father's vehicle and there was no one to come pick it up. Arrocha testified he was never asked if someone could come pick up the vehicle and, if he had been asked, there were "plenty" of family and friends who would have picked up the car, rather than have it impounded. Regarding what it considered a "principal fact controversy," the district court found:

Consistent with the Magistrate's report, I conclude there was some conversation on this point, and that [Arrocha], unaware of the consequences, did not press for family assistance. He preferred to have the car locked and left in place.

-4-

The district court denied the motion to suppress, concluding that impounding the SUV was consistent with applicable Missouri statutes and Liberty Police Department policy because, in the judgment of Officer King, abandoning the car in QuikTrip's busy parking lot would unreasonably interfere with the property owner's possession.

## II.

In South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976), the Supreme Court noted two common police practices. First, "automobiles are frequently taken into police custody" in the interests of public safety and "community caretaking functions." Second, "[w]hen vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents." The Court concluded that, properly implemented, these practices do not run afoul of the Fourth Amendment's search warrant requirement. Id. at 376. This Fourth Amendment ruling has come to be known as the "lawful inventory search" exception to the warrant requirement because, as in this case, it is the search that yields evidence that a criminal defendant later seeks to suppress. See, e.g., Garreau, 658 F.3d at 857 ("An inventory search is reasonable and constitutional if it is conducted according to standardized police procedures."). However, the doctrine in fact encompasses distinct police actions -- the decision to impound or tow a vehicle, the decision to search the vehicle, and the manner and scope of the search. Here, Arrocha does not challenge the Liberty Police Department's written policy that all automobiles that are to be towed must be searched in a prescribed manner, nor does he contend that Officer Mason's search that uncovered the firearm exceeded that policy. Rather, he argues that Officer King's decision to tow the SUV violated the Fourth Amendment.

In Colorado v. Bertine, 479 U.S. 367, 375 (1987), a decision dealing primarily with an inventory search of a closed container, the Supreme Court also addressed the question whether the inventory search was unconstitutional because the police

department regulations gave officers "discretion to choose between impounding [defendant's] van and parking and locking it in a public parking space." The Fourth Amendment permits exercise of such discretion, the Court concluded, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. We interpreted and applied that ruling in United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004):

> Some degree of "standardized criteria" or "established routine" must regulate these police actions, which may be conducted without the safeguards of a warrant or probable cause, to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence.
>
> The requirement that discretion be fettered, however, has never meant that a decision to impound must be made in a "totally mechanical" fashion. . . . It is not feasible for a police department to develop a policy that provides clear-cut guidance in every potential impoundment situation . . . . [T]estimony can be sufficient to establish police [impoundment] procedures. . . . So long as the officer's residual judgment is exercised based on legitimate concerns related to the purposes of an impoundment, his decision to impound a particular vehicle does not run afoul of the Constitution.

(Citations omitted); accord United States v. Frasher, 632 F.3d 450, 454 (8th Cir.), cert. denied, 132 S. Ct. 278 (2011); United States v. Kimhong Thi Le, 474 F.3d 511, 514-15 (8th Cir.), cert. denied, 550 U.S. 969 (2007); United States v. Betterton, 417 F.3d 826, 830-31 (8th Cir. 2005).

We agree with the district court that, although Officer King exercised some discretion in deciding that Arrocha's SUV must be towed, he acted within the degree of "standardized criteria" or "established routine" that our prior towing cases require. Arrocha argues that the post-arrest authority to tow an abandoned vehicle in § 304.155.1(5) cannot justify Officer King's decision because that statute only applies

to vehicles on public property, not on private property such as the QuikTrip parking lot. But § IV.B. of Procedural Instruction 027 authorizes post-arrest towing of vehicles abandoned on private party, and § IV.E. sets forth situations where such a tow will be in the interests of public safety, including when the officer concludes that "the abandoned property . . . unreasonably interferes with the use of the real property by the person in possession."

Arrocha further argues that the authority to tow from private property in § IV.E. of Procedural Instruction 027 cannot justify Officer King's decision because Arrocha's SUV "was legally parked in a marked parking space" and "did not interfere with the use of the real property by Quik-Trip." We disagree. "Police may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard." United States v. Martin, 982 F.2d 1236, 1240 (8th Cir. 1993), citing Bertine. Here, although Officer King did not consult QuikTrip employees before towing Arrocha's SUV, Officers King and Mason testified that the police had an informal agreement with QuikTrip that vehicles abandoned in its busy parking lot because of an arrest would be towed. This is the type of unwritten towing policy that suffices as standardized police procedure in the absence of evidence that an officer's exercise of this discretion in a particular case was "merely a ruse for general rummaging in order to discover incriminating evidence." Petty, 367 F.3d at 1012. Arrocha asserts on appeal that the police were merely rummaging, but the district court adopted the magistrate judge's express finding of "no evidence that the decision to tow [Arrocaha's] car was a ruse for general rummaging in order to discover incriminating evidence." We agree. Although the disturbance calls gave the officers reason to suspect there might be a gun in Arrocha's car, when there is a valid reason to impound a vehicle, "[t]he presence of an investigative motive does not invalidate an otherwise valid inventory search." United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999), cert. denied, 528 U.S. 1119 (2000).

Finally, Arrocha complains that the "officers did not allow Mr. Arrocha to contact anyone and therefore violated the Liberty tow policy." But this is not a Fourth Amendment issue. "Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." United States v. Agofsky, 20 F.3d 866, 873 (8th Cir.) (citing Bertine, 479 U.S. at 372), cert. denied, 513 U.S. 909, 949 (1994). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." Frasher, 632 F.3d at 454. Here, we agree with the district court that Officer King's decision to tow the SUV was a reasonable exercise of discretion that was sufficiently "fettered" by standardized police procedures.[2]

In a supplemental *pro se* brief, Arrocha raised additional issues requiring only brief review. First, he complains that his arrest was based on a "non-extraditable Municipal warrant" and therefore invalid. This issue was not raised in the district court and is based on an unauthenticated document that is not part of the record on appeal. Second, he asserts that Officer Mason seized the SUV keys during an unlawful patdown. This assertion is contrary to the district court's finding that Arrocha told Mason the keys were in his pocket and asked her to roll up the SUV windows. Third, he argues there was no consent to search. However, the inventory search was not upheld based on consent. Finally, he argues the police failed to give him Miranda warnings following his custodial arrest, but he fails to identify a post-arrest statement material to the inventory search, which is the only issue on appeal.

For these reasons, we affirm the judgment of the district court.

_____

_____

[2]Arrocha also argues that Arizona v. Gant, 556 U.S. 332 (2009), calls into question the validity of the inventory search exception. We have previously held that Gant does not apply to an inventory search. See Frasher, 632 F.3d at 455.