# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2603

_____

United States of America

*Plaintiff - Appellee*

v.

Javon N. Shackleford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 12, 2016
Filed: July 27, 2016

_____

Before LOKEN, ARNOLD, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Javon N. Shackleford conditionally pleaded guilty to disposing of a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1), reserving the right to appeal denial of his motion to suppress the firearm, which was seized during a warrantless

search of his vehicle. The district court[1] ruled that the search was constitutionally permissible under the automobile and lawful inventory search exceptions to the Fourth Amendment principle "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quotation omitted). Shackleford appeals, arguing the search was not permitted by either exception. Reviewing the district court's factual findings for clear error and its legal conclusions *de novo*, we affirm. See United States v. Arrocha, 713 F.3d 1159, 1160 (8th Cir. 2013) (standard of review).

## I. Background.

At the suppression hearing, Kansas City Police Officer Darren King testified that he and his partner, Officer William Edwards, were patrolling in the neighborhood of the Hope City mission and received a report that a man named "Javon," driving a red Chevrolet Monte Carlo, may be coming to "shoot up" a nearby residence. Police records admitted at the hearing reflected that Officer Michael Miles had interviewed Kimberly Farley, who reported that Javon Shackleford assaulted her at Hope City the previous day; that she had seen Shackleford with a firearm a few weeks earlier; and that Shackleford and a man named Quentin Fantroy were looking for her. Shortly thereafter, Officer Cooley spoke with Farley's sister, who reported that Shackleford had assaulted Farley the day before and was coming to cause another disturbance at Farley's home near Hope City. Officer Cooley instructed dispatch to have police officers in the area be on the lookout for "Javon," who may be driving from neighboring Wyandotte County in a red Monte Carlo to shoot up Farley's house.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable Sarah W. Hays, Chief United States Magistrate Judge for the Western District of Missouri.

At 1:18 p.m., King and Edwards observed a red Monte Carlo a block or two from Hope City. King asked dispatch to run the license-plate number, which revealed that Javon Shackleford owned the vehicle. The officers activated their emergency lights, and the vehicle pulled over, parking legally. King approached and asked the driver for his name, which Shackleford provided. King instructed Shackleford to get out and place his hands on the vehicle. King testified that he then frisked Shackleford because of the report he might be armed. The frisk did not reveal a firearm. King handcuffed Shackleford and escorted him to the rear of the vehicle, where he sat on the curb. When Officer Miles advised that Farley wished to prosecute the assault, Officer King arrested Shackleford. The officers also learned that Shackleford was a convicted felon. Shackleford denied their request for consent to search the vehicle.

A few minutes into the stop, Fantroy and a woman named Samantha approached, sat next to Shackleford behind the Monte Carlo, and asked the officers what they were doing. One officer explained, "We are here because of . . . some fight or something that's supposed to happen or break out." When Samantha protested, another officer said that they had a call that Shackleford and others were on their way to shoot up Farley's house. Samantha and Shackleford requested that the officers release the vehicle to Samantha. The officers refused. One stated, "As I've been explaining to you, there was [inaudible] a weapon in here, and we . . . cannot have anyone go in this car or jump in this car, as it puts our lives at stake." At no point did the officers handcuff or restrain either Fantroy or Samantha.

King testified that he decided to tow the vehicle. He did not release the vehicle to Samantha because he believed that it was going to be used in a crime, that it was possibly used in a crime the day before, and that there could be a firearm in the vehicle. King testified he did an "inventory search" of the vehicle at the scene, uncovering a loaded handgun in the glove compartment.

## II. Discussion.

On appeal, Shackleford argues the district court erred in concluding that the warrantless search of his vehicle was reasonable under the Fourth Amendment automobile and lawful inventory search exceptions.

**The Automobile Exception.** Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband. See Gant, 556 U.S. at 347; United States v. Ross, 456 U.S. 798, 806-09 (1982); United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009).[2] "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Donnelly, 475 F.3d 946, 954 (8th Cir.), cert. denied, 551 U.S. 1123 (2007), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003) (quotation omitted), cert. denied, 541 U.S. 1081 (2004).

Here, the district court concluded the officers had probable cause to search Shackleford's vehicle under the automobile exception:

---

[2]This exception is distinct from the search-incident-to-lawful-arrest exception at issue in Gant. In Gant, the Court narrowed the incident-to-arrest exception to situations where "the arrestee is unsecured and within reaching distance of the passenger compartment," or where there is "reason[] to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 343 (quotation omitted). The automobile exception requires probable cause to believe contraband or evidence of *any* crime will be found in the vehicle, not merely reason to believe evidence of the crime of arrest will be found.

[T]he officers had been provided information that Javon, the party involved in the assault the previous day, was coming back to create another disturbance. The victim of the assault told officers that she had seen Javon with a gun a few weeks prior. Further, the officers were advised that Javon would possibly be armed and that he was going to shoot up the house of the victim. The officers also knew that Shackleford was a convicted felon. Having received information that defendant Shackleford was possibly armed and that he was going to shoot up somebody's house, and not finding a weapon on Shackleford's person, Officer King testified that he suspected the weapon was in the vehicle. (Record citations omitted.)

On appeal, Shackleford argues the officers had no reliable information that a firearm would be found in the vehicle because the only mention of a potential firearm came from Farley's sister, an anonymous source, and the source of her information was unknown. But the argument understates the officers' collective information. First, as in United States v. Olson, 262 F.3d 795, 798 (8th Cir. 2001), Farley's sister "was not a completely anonymous informant." She was Farley's sister, and she told Officer Cooley that Shackleford had assaulted Farley at Hope City the day before and that Shackleford was possibly armed and on his way to shoot up Farley's nearby house. Second, assault victim Farley told Officer Miles that Shackleford had assaulted her and that Shackleford and Quentin Fantroy, friends of her ex-boyfriend, "were just at her sister's house looking for the victim." The sisters' separate statements were sufficiently specific and consistent to warrant an immediate alert to officers in the neighborhood to intercept "Javon," driving a red Monte Carlo, to prevent a potentially violent disturbance.

Third, Officers King and Edwards were in the area, quickly spotted the Monte Carlo near Hope City and Farley's home, and made an investigative stop that Shackleford does not challenge. King and Edwards learned during the stop that Shackleford was a convicted felon. He was unarmed but refused to consent to a

search of his vehicle. Fantroy -- the other man named by Farley -- appeared on the scene within minutes, and Shackleford asked that the vehicle be released to Fantroy's companion, Samantha. In these circumstances, the sister's information that Shackleford might be armed was sufficiently corroborated by Farley and by what the officers observed to provide "a fair probability that contraband or evidence of a crime" would be found in the vehicle. Accordingly, they had probable cause to make an immediate warrantless search under the well-established automobile exception.

We conclude the district court properly denied Shackleford's motion to suppress because the search was constitutionally proper under the automobile exception. Thus, we need not resolve his additional contention that Officer King's decision to conduct an inventory search before towing the vehicle was not a valid inventory search. See generally Arrocha, 713 F.3d at 1162-64.

The judgment of the district court is affirmed.

_____