# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4052
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Shane Scott

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 22, 2017
Filed: December 13, 2017
[Published]
_____

Before SMITH, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.
_____

PER CURIAM.

After the district court[1] denied Anthony Shane Scott's motion to suppress guns seized from his home, Scott conditionally pleaded guilty to being a felon in

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

possession of firearms in violation of 18 U.S.C. § 922(g)(1), reserving the right to appeal the denial of his motion to suppress. Scott now appeals the order denying his motion, and, for the reasons that follow, we affirm.

## I. *Background*

Early one afternoon, local law enforcement responded to multiple security alarms at a rural residence in Fulton County, Arkansas. The officers drove down the long driveway and stopped at a cattle gate. A truck simultaneously pulled up on the other side of the gate, and Scott got out. According to the officers, Scott had blood on his clothes and was visibly shaken up. He told the officers that his wife, who he claimed was on drugs, had run over him with the truck, shot at him, and thrown the gun in the yard. Scott expressed concern for the safety of his young children, who were still with his wife at the house. At this point, the officers considered Scott to be the potential victim of a domestic dispute. They asked Scott to stay at the gate area and drove their cars to the house.

At the house, the officers dispersed to observe both front and rear exits. Those officers who approached the front of the house saw a woman sitting in a chair at, or just within, the threshold of the open side of a two-bay garage. She was smoking and using her cell phone. She did not appear armed or threatening. She did not say anything to the officers, nor did she gesture for them to come in or keep out. The officers approached this woman and began speaking with her. As they approached, two little boys entered the garage from the house.

The woman identified herself as Scott's wife, Stacy. She told them that earlier she attempted to drive away in the truck with her small child but that Scott tried to stop her. He fired four shots at the truck and had grabbed and clung to the truck's side mirror, ripping it off. He then jumped into the bed of the truck and broke the rear window. In fear, Stacy and her children left the truck and ran inside the house. Stacy told the officers that Scott eventually threw the gun into the yard. She asked her small

-2-

son where "Daddy" had thrown the gun, and the boy pointed to the yard near the house. Some of the officers searched the yard for a gun, but they did not find it. The officers reported Stacy's demeanor during this conversation variously as angry, calm, and frightened, but all described her as cooperative. She did not appear to be on drugs. With the family now secure, one of the officers went back to the cattle gate and placed Scott in the backseat of the police car.

The senior officer present called Scott's parole officer, who granted permission for the officers to enter Scott's home to conduct a parole search. The senior officer and parole officer recalled the conversation differently, but the parole officer acknowledged that it was a fluid situation and that a gun was involved. The parole officer went to Scott's house and, upon his arrival, did not object to the search, which was then underway.

Stacy told the officers that the house contained other firearms, besides the gun that Scott had discarded, which belonged to her husband and son. She said that she would take the officers inside and show them the guns as well as the home's security camera. The officers accepted her offer and followed her inside. Unfortunately, the memory card was missing from the security equipment resulting in no recording of the incident. Stacy then showed the officers around the house, leading them to a hidden gun and a gun safe. To open the safe, Stacy called her older son at school who told her the safe's code. The officers found several firearms inside the safe. The officers uniformly testified that Stacy freely cooperated and appeared relieved by their presence. When an investigator arrived, the officers informed him of Stacy's cooperation. The investigator discussed a consent-to-search form with Stacy, who then signed it.

Scott's counsel moved to suppress the items seized from the residence. The district court declined to suppress any of the evidence obtained in the house. First, it found exigent circumstances justified the officers' entry onto the property and into

-3-

the garage. The court, however, concluded that the exigent circumstances ceased once the officers spoke with Stacy in the garage and saw that the small children were safe. The district court then held that although exigent circumstances were no longer present, Stacy either expressly or impliedly consented to the officers' entry. Third, the district court determined that even if Stacy's oral invitation to enter the house was not consent, Stacy gave voluntary written consent after the fact. Finally, the district court held that the residence search was also a valid search pursuant to the parole officer's approval for a parole search and his subsequent ratification of the search.

## II. *Discussion*

On appeal, Scott argues that the district court erred by not suppressing the evidence seized from the house and all related testimony.[2] He argues primarily that the officers' warrantless entry into the garage violated the Fourth Amendment. Scott also argues that Stacy's later written consent did not purge the taint of the prior unlawful entry. Finally, he says that the search was not a valid parole search.

In an appeal from the denial of a motion to suppress, "we review the district court's legal conclusions *de novo* and factual findings for clear error." *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011) (citation omitted).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). But "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is

---

[2]Scott initially argued that the district court also failed to suppress certain evidence seized from his truck based on an allegedly invalid search warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). The government has agreed not to use the evidence seized from the truck, and Scott conceded at oral argument that this issue is moot. We therefore need not address Scott's initial arguments about a *Franks* issue.

subject to certain exceptions." *Id*. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" *Id.* at 404 (alteration in original) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).

The prohibition against warrantless entries does not apply if voluntary consent has been obtained. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Likewise, a warrant is not required if "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Stuart*, 547 U.S. at 403 (citation omitted). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Id.* Thus, "legitimate concern for the safety of individuals may constitute 'exigent circumstances' justifying warrantless entries and searches." *United States v. Janis*, 387 F.3d 682, 687 (8th Cir. 2004) (citations omitted) (holding exigent circumstances justified a warrantless entry where officers knew a gun had discharged and injured someone, were told the gun was in the house, and observed blood in the driveway).

We agree with the district court that exigent circumstances justified the officers' warrantless entry into the garage.[3] When the officers approached the garage, they had just been told about a violent domestic dispute involving a motor vehicle and a firearm by an individual covered in blood, who advised them that children were present at the residence. *See id.* at 687–88. They proceeded up to and into the garage legitimately concerned that someone at the house may be armed and that children may be hurt or in danger. These are exigent circumstances and justified entering the garage to address the only visible person. *See id.* at 688 ("[T]he home entry could be justified for the officers to determine whether anyone else was injured or in danger . . . .").

---

[3]Scott and the government agree that exigent circumstances justified the entry past the cattle gate to the house.

Scott admits exigent circumstances were present when the police arrived but argues that they abated before the officers crossed the threshold of the garage. We disagree. In its written opinion, the district court concluded that "[o]nce the officers spoke with Stacy in the garage and saw the small children about whom [Scott] was worried, and determined that they were all safe, the exigent circumstances disappeared." *United States v. Scott*, 4:14-cr-00142-SWW, slip op. at 4 (E.D. Ark. Apr. 12, 2016), ECF No. 51. The factual finding that officers entered the garage before they determined everyone was safe is not clearly erroneous. To be sure, some officers testified that they concluded there was no longer an emergency as they walked up to the garage while others said that they made that determination only after entering the garage to speak with Stacy. The officers' varied and potentially conflicting testimony reflects different perspectives of a highly fluid and evolving situation as the officers arrived on scene. Viewed objectively, however, reasonable officers were indeed justified in crossing the garage threshold to fully assess the situation and determine the safety of everyone present, including the children, who some officers did not observe until after entering the garage. *See Stuart*, 547 U.S. at 403.

Scott does not challenge the district court's factual finding that Stacy invited the officers into the home after they entered the garage. On this record, we agree with the district court that exigent circumstances justified the warrantless entry into the garage and that Stacy consented to the officers' entry into the home. Therefore, the officers' subsequent discovery of the guns within the home did not violate the Fourth Amendment.[4]

---

[4] We need not address Scott's remaining arguments about whether Stacy's later written consent purged the taint of any prior unlawful entry or whether the residence search was lawful as a parole search. *United States v. Lumpkins*, 687 F.3d 1011, 1014 n.3 (8th Cir. 2012) ("Because we find the warrantless search valid on the basis of consent, we need not address the alternative theories advanced by the Government to justify the search.").

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____