# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-4102

———————————————

United States of America

*Plaintiff - Appellee*

v.

Sharrod Juanel Rowe

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————————

Submitted: October 19, 2017
Filed: December 26, 2017

——————————

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

——————————

BEAM, Circuit Judge.

Sharrod Juanel Rowe, who was convicted following a jury trial of conspiracy to distribute cocaine, challenges the district court's[1] pretrial denial of his motion to

———————————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Becky R. Thorson, United States Magistrate Judge for the District of Minnesota.

suppress as well as the court's later Guidelines calculation and resulting sentence. We affirm.

## I.    BACKGROUND

The genesis of this case is the stop of the vehicle Rowe was driving on November 30, 2014, in the Minneapolis area. Although discussing arguments at the outset may be unconventional, the source of the facts themselves are disputed in this case so we begin by addressing the legal arguments on the disputed factual issues. Rowe made his initial appearance on the same day the magistrate judge issued a report and recommendation denying motions to suppress of Rowe's previous codefendants. Thus, Rowe entered these proceedings *after* a hearing took place covering the stop and seizure. Rowe then moved on his own behalf to suppress evidence and statements related to the stop of the BMW.

A hearing was held on Rowe's motion on January 13, 2016. During Rowe's hearing, the parties discussed whether the court could, or would, consider evidence and testimony adduced at the August 25, 2015, hearing held on the codefendants' motions.[2] Although Rowe's counsel initially agreed to the use of the August hearing testimony, and seemingly reiterated that intention more than once, both parties also asserted reluctance and objections to the magistrate judge at the January hearing regarding its use. The court intimated at one time early in the hearing that it would not rely upon the August testimony but ultimately appeared to maintain its intention to review testimony from the August suppression hearing involving the exact same stop. Accordingly, it was equivocal at best as to how, if at all, the August testimony would be used. At each hearing–August and January–the government offered only two witnesses. The officer who initiated the stop, Trooper Thul, testified at both

---

[2]Appellant's Motion to Supplement the Record on Appeal to include the transcript from the August 25, 2015, hearing is granted.

hearings but different investigators offered the additional testimony–Officer Evans in August and Officer Biederman in January. As is evident from the report and recommendation of the magistrate judge on Rowe's motion to suppress, it did in fact reference evidence adduced at the August hearing.

Rowe first claims that the magistrate judge and the district court violated his Due Process and Confrontation Clause rights by relying on evidence adduced at a prior hearing involving Rowe's codefendants without providing Rowe the opportunity to ask any questions or cross-examine any non-present witnesses. U.S. Const. amends. V, VI. The government responds first, that the district court did not in fact rely upon evidence adduced at the earlier hearing but rather only included the August hearing in its citation list as additional support. It claims the facts set forth by the court were adduced in their entirety during the January hearing–that the two hearings were essentially identical. Second, the government argues that even if the court relied in part on evidence from the August hearing, it was entitled to do so.

Having thoroughly reviewed both hearing transcripts, we find that there were in fact some differences in the testimony adduced and the two hearings were not "identical" as the government claims. However, any facts recited by the district court that were solely adduced at the August hearing were not legally significant in the final analysis. Importantly, at both hearings, the government offered the search warrant and the two police videos of Rowe's stop, all of which provide extensive information regarding the investigation, the stop, and the ultimate search. The district court appropriately ruled upon the motion to suppress before it. Too, at Rowe's trial, both investigating officers–Evans and Biederman–testified.

No matter the comparison of the evidence adduced at both hearings, it was not erroneous for the district court to review evidence adduced at the August hearing. Although denying the right to cross-examine a witness at trial "would be constitutional error of the first magnitude" in most instances, the right of

confrontation is not absolute. United States v. Boyce, 797 F.2d 691, 692-93 (8th Cir. 1986) (quoting Brookhart v. Janis, 384 U.S. 1, 3 (1966)). Courts may consider hearsay evidence at suppression hearings and it is not uncommon for different officers to testify at these hearings in various capacities. United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008) ("Although not admissible at trial, the district court may rely on hearsay evidence at a suppression hearing."). "[E]vidence consisting of the out-of-court statements of persons not testifying at trial may be admitted even though the defendant has no opportunity to either confront or cross-examine the declarants." Boyce, 797 F.2d at 693. Thus, had any of the facts solely adduced at the August hearing been legally significant in the court's analysis, the court did not err in relying on that testimony.

Even though it was not erroneous for the district court to rely upon evidence from the earlier hearing, we recite the facts limited to those known *solely* as a result of the testimony and exhibits admitted at Rowe's January hearing. Stated earlier, any factual differences between the two hearings that were allegedly relied upon by the district court were not legally significant, but we limit our recitation only to the January hearing to make that readily apparent.

In the fall of 2014, a confidential informant (CI) who had for years provided accurate, timely and verifiable information to the police, informed Minneapolis police that Houston Oliver was coordinating the shipment of cocaine from Arizona to Minneapolis via two-day priority mail. He stated that the cocaine would be packaged in silverware boxes from a particular post office in Maricopa, Arizona. Minneapolis police, along with the cooperation of the Minneapolis postal inspector, successfully intercepted a shipment of cocaine mailed from Arizona to Minnesota based upon this information. The CI implicated three individuals in the shipment of the cocaine, one of whom cooperated with the police following the interception of the package. This man confirmed his role in the scheme, and confirmed the information provided by the

CI regarding the packaging and shipment of the drugs, and the names of the two others involved. Rowe was not named at that time.

The CI additionally told officers that Oliver was going to transport a large quantity of cocaine from Arizona to Minnesota in a gray BMW with Minnesota license plates on November 30. The CI provided the approximate arrival time but did not know the identity of the person transporting the cocaine. A subsequent records check revealed that Oliver was the registered owner of a 2002 BMW 745Li with Minnesota license plates, just as the CI stated. Sergeant Biederman of the Minneapolis Police Department worked on this case with the mail information and again when the CI gave information about the BMW transport. He was the CI's primary contact and the officer who coordinated the stop and later search of the vehicle.

Based on the CI's information the Minneapolis police issued an alert about Oliver's BMW's possible involvement in narcotics trafficking and law enforcement officials, including Minnesota State Trooper Thul, surveilled Interstate 35 in an effort to intercept the car. After being advised that officers involved in the ongoing investigation had located the suspected vehicle, and requested that she stop it, Trooper Thul ultimately spotted it and pulled it over. Despite the information she received from dispatch, and her knowledge that the vehicle would be impounded if discovered, Trooper Thul developed her own probable cause to stop the vehicle and pulled the BMW over for excessive window tint. She claimed it was her regular practice to develop her own probable cause for a traffic stop even when she has other information regarding possible criminal activity.

Trooper Thul pulled Rowe over at about 9:45 p.m. and was joined by other officers. Thul approached the BMW and questioned Rowe, the sole occupant of the vehicle. This initial conversation lasted about four minutes with Thul asking routine questions. Rowe initially told Thul that he was traveling to his home in Eagan,

Minnesota (a city in the opposite direction) but changed his answer to state that he was going to his girlfriend's house. He also explained that the BMW belonged to "Houston." Thereafter, Trooper Thul returned to her vehicle to perform routine traffic stop checks and as she did so, a second officer approached Rowe and talked to him. The officers conferred after these interactions and noted inconsistencies in Rowe's answers that substantiated the initial information they had received. Accordingly, they called a narcotics K9 and Thul continued to complete her routine checks and paperwork.

Trooper Thul never issued a citation for excessive window tint. About the time the narcotics K9 arrived, officers removed Rowe from the vehicle, handcuffed him and placed him in the back of a squad car. Officers put Rowe in the squad car because of the location of the stop (on a busy roadway), the weather (frigidly cold), and the impending dog sniff; and they handcuffed him for officer safety. While in the patrol car, Rowe can be heard on the vehicle's recording system stating, "Somebody told on us. Somebody told on us." Rowe asked to use the restroom and he was transported to the police station and allowed to do so. He was not arrested that night. At the scene, while Rowe was in the back of the squad car, a drug dog alerted to the presence of narcotics near the trunk of the vehicle, and the officers towed and impounded the vehicle. Officers ultimately searched the vehicle on December 2, 2014, pursuant to a warrant and discovered six packages of cocaine.

Rowe moved to dismiss the indictment and to suppress the evidence and the "statements" he made in the squad car. The magistrate judge recommended denial of both and the district court adopted the report and recommendation.

-6-

## II.	DISCUSSION

### A.	Stop and Seizure

In our review of the district court's denial of a motion to suppress evidence, we review the district court's findings of fact for clear error, and review de novo whether the search violated the Fourth Amendment. United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008). The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment," and must be supported by either probable cause or an articulable suspicion that a violation of law has occurred. Peralez, 526 F.3d at 1119; United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007).

Rowe's arguments on appeal challenge the stop and his detention on constitutional grounds, focusing on Trooper Thul's stated reason for the stop, the excessively tinted windows. Rowe argues that the traffic stop was unconstitutionally expanded beyond its initial purpose and that he was de facto arrested without probable cause. However, discussing only Thul's reason for the stop does not tell the whole story and we do not review this stop in a vacuum. The collective knowledge of the investigating officers and the officers at the scene paints a different picture and demands an alternative analysis.

Probable cause for the stop and search of this vehicle may be based on the collective knowledge of all law enforcement officers involved in the investigation and need not be based solely upon information within knowledge of the officer(s) on the scene if there is some degree of communication. United States v. Shackleford, 830 F.3d 751, 753-54 (8th Cir. 2016). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996) (relying on years of precedent to foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the

individual officers involved); <u>United States v. Morales</u>, 238 F.3d 952, 954 (8th Cir. 2001) (probable cause may be based on collective knowledge of all officers involved in the investigation and need not be based solely on the information within the knowledge of the officer on the scene, if there is some degree of communication). Given the collective knowledge of the investigating officers, including the corroborated CI tips both previously and ongoing, the alert, and the request by officers for Trooper Thul to stop the identified vehicle, the stop itself was supported by probable cause. <u>United State v. Hambrick</u>, 630 F.3d 742, 747 (8th Cir. 2011) ("To support a probable cause determination, officers may rely on an informant's tip if the informant has provided reliable information in the past or if his tip is independently corroborated.").

Investigating officers received information from a confidential reliable source regarding the drug dealings of Houston Oliver, and others, specifically alerting them to a large shipment of drugs on November 30 coming from Arizona to Minnesota in a BMW specifically described by the CI. The CI conveyed this information on the heels of telling officers about the shipment via mail of cocaine from the same individual that resulted in a successful interception. Based on this information, the alert went out via dispatch on November 30 and thus alerted Trooper Thul to the possibility that this BMW would be on the roadway that night. Before she identified the vehicle, however, she received a call from investigators working the case that they had spotted the car and asked that she conduct a stop. Once pulled over, Rowe himself corroborated the information provided by the CI. Rowe affirmed that he was driving "Houston's" car from Arizona to Minnesota as indicated by the informant.

The district court held that despite Trooper Thul's explanation that she pulled the car over for the overly tinted windows, the probable cause that already existed from the CI's information was enough in this case. Specifically, the court held that "[b]ased on this probable cause to believe that the BMW contained cocaine, the police were authorized under the automobile exception to stop, search, and seize the

vehicle without a warrant." Based on our de novo review of the record, we also conclude that the collective knowledge of the officers support the stop and detention of Rowe, as well as the later search of the impounded vehicle. United States v. Vore, 743 F.3d 1175, 1179 (8th Cir. 2014); United States v. Castaneda, 438 F.3d 891, 894 (8th Cir. 2006).

There was in fact probable cause to arrest Rowe, although he was not arrested that night, as he was the sole occupant in a vehicle likely transporting a large shipment of cocaine. Officer Biederman's observation that a drug dealer is not likely to allow an unwitting or unknowing individual to transport a large drug shipment was relevant in this probable cause determination. The court correctly held that the probable cause to believe that the car contained cocaine, coupled with Rowe's status as the vehicle's driver, gave the officers reasonable grounds for believing that he "had knowledge of, and exercised dominion and control over, the cocaine." Maryland v. Pringle, 540 U.S. 366, 372 (2003) (holding that officers had probable cause to arrest an occupant of a car containing cocaine because it would have been "entirely reasonable" to infer that he "had knowledge of, and exercised dominion and control over, the cocaine").

The error in Rowe's argument is his focus on the fact that Trooper Thul effectuated an investigatory stop based only on the excessive window tint. The stop was not unconstitutionally expanded given that the entire basis for the stop was the drug interdiction, despite the trooper's alternate reasoning offered. Rowe's argument that the officers exceeded the scope of their authority and thus converted the seizure into a de facto arrest is inapposite. Rowe cites to jurisprudence dealing with investigative stops, which we do not have in this case on the facts before us. Even if we were to entertain that argument, "[t]his is not the case to wrestle with the boundaries of detentions and arrests," because as we have already determined, probable cause supported the officers' actions and thus any arrest that might have occurred was not unlawful and was warranted on these facts. United States v.

<u>Guevara</u>, 731 F.3d 824, 831-32 (8th Cir. 2013). "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause . . . ." <u>Ulrich v. Pope Cnty.</u>, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting <u>Borgman v. Kedley</u>, 646 F.3d 518, 522-23 (8th Cir. 2011)); <u>United States v. Martinez</u>, 462 F.3d 903, 907 (8th Cir. 2006) (holding in the alternative that even if handcuffing a suspect did convert the detention into an arrest, the arrest was justified by probable cause). Accordingly, the actions of the officers that night were supported by probable cause.

### B.      Guidelines Calculation

Finally, Rowe argues that the district court committed procedural error by denying him a mitigating role reduction pursuant to § 3B1.2 of the sentencing Guidelines. U.S.S.G. § 3B1.2 The district court's grant or denial of a mitigating role reduction is a factual finding reviewed for clear error. <u>United States v. Salazar-Aleman</u>, 741 F.3d 878, 880 (8th Cir. 2013). "The defendant bears the burden of proving that he is entitled to this reduction." <u>Id.</u> Rowe argues that, at best, he was a drug courier in Houston Oliver's drug trafficking operation and was less culpable than his coconspirators. Rowe fails in his burden, however. "[T]he Eighth Circuit has never found someone's role as a courier in and of itself sufficient to warrant a mitigating role reduction." <u>Id.</u> at 881. There was no clear error here.

### III.   CONCLUSION

We affirm the district court's denial of Rowe's motion to suppress and Rowe's resulting sentence.

———————————————————