# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2497
_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Andrew Blacksmith, also known as Jon Andrew Blacksmith

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: April 11, 2022
Filed: July 21, 2022
[Unpublished]
_____

Before SHEPHERD, ERICKSON, and STRAS, Circuit Judges.
_____

PER CURIAM.

Jonathan Blacksmith appeals from the district court's[1] denial of his motion to suppress evidence obtained from a vehicle he was driving. We affirm.

_____

[1]The Honorable Jeffrey L. Viken, then Chief Judge, United States District Judge for the District of South Dakota, adopting the report and recommendation of the Honorable Daneta Wollmann, United States Magistrate Judge for the District of South Dakota.

On February 17, 2017, the Bureau of Indian Affairs ("BIA") Drug Task Force sent an e-mail to the Oglala Sioux Tribe Department of Public Safety ("OSTDPS"), notifying officers of outstanding federal and tribal arrest warrants for Blacksmith. The e-mail also informed the OSTDPS that Blacksmith was suspected of trafficking drugs on the Pine Ridge Reservation. It included a photograph of Blacksmith's unusual facial tattoos and a description of a borrowed silver Pontiac Grand Prix that he was believed to be driving.

That afternoon, OSTDPS Officer Ronald Red Owl, who had reviewed the email, spotted a silver Grand Prix in Kyle, South Dakota, which is on the Pine Ridge Reservation. He ran a license plate check and confirmed that the car was the one Blacksmith was suspected of driving. Officer Red Owl observed the car was occupied by a male. Officer Red Owl talked to dispatch and confirmed the existence of outstanding warrants for Blacksmith.

When the Grand Prix parked at a convenience store, Officer Red Owl monitored the vehicle from across the street and waited for backup. Lieutenant Nicholas Campbell of the OSTDPS soon arrived, and the officers approached the Grand Prix. They identified Blacksmith by his facial tattoos. Blacksmith eventually confirmed his identity, and the officers arrested him on the outstanding warrants. When Blacksmith attempted to call someone to get the car, Lieutenant Campbell told him to put the phone down. Blacksmith never informed the officers who he was calling to get the car. Consistent with department policy, the officers decided to have the car towed and impounded. Following the inventory search, the vehicle was driven to the station and then towed to the impoundment lot. During the inventory search, the officers found guns, ammunition, cash, drugs, and drug paraphernalia.

Blacksmith was later indicted on various drug and firearm charges. He moved to suppress all the evidence seized by the officers during the inventory search. A suppression hearing was held during which Officer Red Owl testified that the OSTDPS's policy is to inventory and tow a vehicle if the sole occupant is arrested and there is no one to get it in a reasonable amount of time. Lieutenant Campbell

also testified, confirming Officer Red Owl's testimony and adding that the OSTDPS has a policy of not leaving a vehicle in a business parking lot under circumstances similar to Blacksmith's arrest.

The magistrate judge recommended denying Blacksmith's suppression motion on the ground that the officers conducted a lawful inventory search. The district court adopted the magistrate judge's report and recommendation and overruled Blacksmith's objections. Blacksmith was convicted on all five counts and now appeals the denial of his suppression motion.

We review the district court's denial of a motion to suppress under a mixed standard, reviewing the findings of fact for clear error and the ultimate legal conclusion *de novo*. United States v. Daniels, 932 F.3d 1120, 1125 (8th Cir. 2019). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Perez, 29 F.4th 975, 983 (8th Cir. 2022) (quoting United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008)).

Blacksmith claims the search of the Grand Prix was pretextual and in violation of his Fourth Amendment rights, relying on Arizona v. Gant, 556 U.S. 332 (2009). Gant, however, "does not apply to an inventory search." United States v. Arrocha, 713 F.3d 1159, 1164 n.2 (8th Cir. 2013) (citing United States v. Frasher, 632 F.3d 450, 455 (8th Cir. 2011)). Blacksmith also claims that the officers should have released the Grand Prix to its owner rather than impound it. Blacksmith never told the officers that he was trying to call the Grand Prix's owner or another authorized driver to come get the Grand Prix. Even if a willing driver was available, that fact does not necessarily render an impoundment unlawful.

> The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy—even a policy that provides officers with discretion as to the proper course of action to

take—and the decision is made 'on the basis of something other than suspicion of evidence of criminal activity.'

Perez, 29 F.4th at 984 (quoting United States v. Kimhong Thi Le, 474 F.3d 511, 514 (8th Cir. 2007)); see Arrocha, 713 F.3d at 1164 (stating that complaints that officers did not allow the defendant to contact anyone to avoid having the vehicle impounded and inventoried is not a Fourth Amendment issue). The officers' decision to impound the Grand Prix was guided by policy and not simply suspicion of criminal activity.

When law enforcement officers search a vehicle prior to impoundment, incriminating evidence found during the search need not be suppressed so long as the officers "follow a routine practice of securing and inventorying the automobiles' contents." South Dakota v. Opperman, 428 U.S. 364, 369–72, 376 (1976); see United States v. Everett, 977 F.3d 679, 683–84 (8th Cir. 2020) (noting that inventory searches for personal effects conducted in accordance with a standardized policy are not unreasonable under the Fourth Amendment so long as the officer's sole purpose is not to investigate an alleged crime); United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999) (stating "[t]he presence of an investigative motive does not invalidate an otherwise valid inventory search"). Because the officers acted within the degree of "standardized criteria" or "established routine" that our prior towing cases require, see Perez, 29 F.4th at 985 (cleaned up), we find the inventory search was not unreasonable under the Fourth Amendment.

For the foregoing reasons, we affirm the district court's judgment.

_____