# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3143

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Alvaro Arciniega, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 17, 2009
Filed: June 24, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Alvaro Arciniega conditionally pleaded guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841. He now appeals the district court's[1] order denying his motion to suppress evidence. We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable F. A. Gossett, United States Magistrate Judge for the District of Nebraska.

I.

In early February 2007, officers in the narcotics unit of the Omaha, Nebraska, Police Department received a tip that Arciniega was distributing cocaine out of his home and electronics business. Officer Mark Lang led the investigation, and with the help of a cooperating witness, Lang scheduled a targeted buy for February 27, 2007. At a briefing on the day of the buy, the other officers assigned to the case were informed that Arciniega would be driving a Green Dodge Durango. Officer Michael Bossman, a member of the canine unit, was instructed to drive his police cruiser to a location where he could intercept Arciniega.

At approximately 5:15 p.m. on February 27, the officers learned that Arciniega was headed toward the rendezvous point. Shortly thereafter, Officer Bossman saw a Green Dodge Durango that matched the description of Arciniega's vehicle. Bossman also noticed that there was a large oval air freshener hanging from the Durango's rearview mirror, which he recognized as a violation of a state traffic law prohibiting view obstruction. He activated his emergency lights and initiated a traffic stop. Bossman told Arciniega that he had been stopped for illegal view obstruction and requested Arciniega's driver's license, registration, and insurance. Bossman then asked Arciniega to step over to the police cruiser to review the documents.

During the course of the stop, several other officers involved with the investigation arrived on the scene. Officer Gary Kula took over speaking with Arciniega while Bossman started walking his canine around the Durango. Using a mixture of Spanish and English, Kula told Arciniega that the police were conducting a narcotics investigation and asked if he was willing to cooperate. Arciniega appeared to understand the question and nodded yes. Arciniega read and signed a Spanish consent-to-search form for his vehicle and thereafter observed the vehicle search without objection. The officers found four ounces of cocaine underneath the front passenger seat of the vehicle.

After placing Arciniega in handcuffs, Officer Lang asked if he would consent to a search of his electronics business, to which Arciniega replied "go ahead, okay." The officers escorted Arciniega to the business, where they waited approximately thirty minutes for the arrival of Officer Edith Andersen, a Spanish-speaking translator. Because Arciniega's wife and child were present, Andersen and Lang took Arciniega into a restroom to talk privately. Speaking in Spanish, Andersen asked Arciniega if he would consent to a search of the business and his residence, and he agreed. Arciniega also signed an English consent-to-search form that Andersen explained. The searches revealed several incriminating items, including more than $26,000 in cash and materials used for packaging illegal narcotics.

## II.

On an appeal from a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*. United States v. Lopez-Vargas, 457 F.3d 828, 830 (8th Cir. 2006).

## A.

Arciniega first contends that the district court abused its discretion in refusing to authorize a *subpoena duces tecum* for all previous traffic citations issued by Officer Bossman under Nebraska's view obstruction statute. During Arciniega's suppression hearing, Bossman estimated that he had made several hundred traffic stops for view obstruction. He also testified that he does not always issue tickets for these violations, and he stated that on many occasions he has not stopped drivers with objects hanging from their rearview mirrors. Arciniega sought to subpoena records from Bossman's prior traffic stops on the ground that the records would allow him to establish that the stop in his case was based on an impermissible motive.

"A district court may, in its discretion, determine that the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case." United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998). Arciniega argues that the traffic records are relevant because they would establish that Officer Bossman's asserted reason for making the traffic stop was a pretext. Even if we assume that Bossman would not have initiated the stop had he not believed that a drug deal was in progress, that fact is beside the point. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996). We have repeatedly held that any traffic violation, however minor, gives an officer probable cause to stop a vehicle. See, e.g., United States v. Barragan, 379 F.3d 524, 528 (8th Cir. 2004). Once an officer has probable cause, "the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996). It is similarly irrelevant that the officer may have ignored the violation were it not for "a suspicion that greater crimes are afoot." United States v. Luna, 368 F.3d 876, 878 (8th Cir. 2004). The only possible relevance of the citations would have been to challenge the credibility of Officer Bossman's statement about the number of prior citations he had issued—a peripheral aspect of his testimony. The state traffic records were not in the government's possession and locating the records would have been a difficult and time-consuming process. Accordingly, the district court did not abuse its discretion in determining that the burden of producing the records outweighed any possible relevance they might have had to Arciniega's case.[2]

---

[2]Although Arciniega vaguely suggests that the traffic records might have allowed him to establish a violation of his right to equal protection, he has not made the initial "credible showing of different treatment of similarly situated persons" necessary to support discovery for this type of claim. See United States v. Armstrong, 517 U.S. 456, 470 (1996).

## B.

Arciniega also argues that Nebraska's windshield obstruction statute is unconstitutionally vague because it is not clear when an obstruction is significant enough to violate the law. In rejecting a similar argument, we explained that "[t]he plain language of the statute unambiguously provides that 'any object' that obstructs a clear and full view through the windshield violates Nebraska law." United States v. Ramos-Caraballo, 375 F.3d 797, 801 (8th Cir. 2004); see also Neb. Rev. Stat. § 60-6,256. Arciniega responds that, interpreted in this manner, the statute is irrational because it makes exceptions for government-approved objects, such as handicapped parking permits. We disagree. When, as here, there is no suspect class involved, "the law need not be in every respect logically consistent with its aims to be constitutional." Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 487-88 (1955). Rational-basis review "does not require a perfect or exact fit between the means used and the ends sought." United States v. Johnson, 495 F.3d 951, 963 (8th Cir. 2007). The Nebraska legislature's decision to provide some exceptions to an otherwise broad rule does not make the law irrational. Accordingly, the district court did not err in rejecting Arciniega's challenge to the constitutionality of the statute.

## C.

Finally, Arciniega argues that the district court erred in finding that he voluntarily consented to the searches of his vehicle, electronics business, and residence. Whether an individual's consent is voluntary is a question of fact that must be determined from the totality of the circumstances. United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). "The government bears the burden to prove by a preponderance of the evidence that consent to search was freely given, but awareness of the right to refuse is not necessary for consent to be voluntary." Id. (citations omitted). Factors relevant to the analysis include (1) the individual's age and mental ability; (2) whether the

individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of his <u>Miranda</u> rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. <u>Id.</u> (citing <u>United States v. Chaidez</u>, 906 F.2d 377, 381 (8th Cir. 1990)). It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search. <u>Id.</u>

At the time of the searches, Arciniega was an adult with no history of mental or psychological impairments. He was not under the influence of drugs or alcohol, and there is no indication that he was threatened or coerced. Although Arciniega contends that the police misrepresented the purpose of the traffic stop, the record shows that Officer Kula informed Arciniega that the officers were conducting a narcotics investigation. As recounted above, using a mixture of Spanish and English, Kula requested Arciniega's permission to search the vehicle, following which Arciniega read and signed a Spanish consent form and raised no objection as the police conducted the search. The record therefore supports the conclusion that Arciniega voluntarily consented to the search of his vehicle.

The voluntariness of Arciniega's subsequent consent to the search of his home and business presents a slightly closer question. After finding cocaine in the vehicle, the officers placed Arciniega in handcuffs and Officer Lang asked if he would cooperate in a search of his electronics business, to which Arciniega agreed. Lang and Andersen, the Spanish-speaking translator, later spoke with Arciniega in a restroom at the business, at which time he consented to a search of the business and his residence. Arciniega contends that his consent was involuntary because he was not

informed of his <u>Miranda</u> rights until after the search and because the interview was conducted in a private area. Although <u>Miranda</u> warnings may decrease the likelihood that consent has been subtly coerced, they are not required to establish voluntariness. <u>United States v. Lee</u>, 356 F.3d 831, 834 (8th Cir. 2003). That the interview was conducted in a private area is a factor that must be examined in the context of the entire record. There is no evidence that the officers engaged in any threatening or coercive conduct while they were in the restroom with Arciniega. The district court credited Officer Andersen's testimony that Arciniega understood the requests and that he had responded in a calm, cooperative manner. Moreover, Arciniega's prior criminal record suggests that he was cognizant of the protections afforded by the legal system. In light of the totality of the circumstances, we cannot say that the district court clearly erred in concluding that Arciniega's consent was voluntarily given. Accordingly, the district court did not err in denying Arciniega's motion to suppress evidence.

The judgment is affirmed.

_____