# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1959

_____

United States of America,    *
                             *
            Appellee,        *
                             *   Appeal from the United States
      v.                     *   District Court for the
                             *   Northern District of Iowa.
Pamela Golinveaux,           *
                             *
            Appellant.       *

_____

Submitted: April 14, 2010
Filed: July 28, 2010

_____

Before RILEY, Chief Judge, COLLOTON and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Pamela Golinveaux pled guilty to being a felon in possession of seven rounds of .22 caliber ammunition while having been previously convicted of three or more violent felony offenses, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), conditioned upon this court's review of the district court's[1] denial of her motion to suppress. Golinveaux argues the ammunition should have been suppressed because

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendations of the Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa.

she did not voluntarily consent to the search of her vehicle. The district court found the search was voluntary, and we affirm.

## I. BACKGROUND

On March 12, 2004, a loss prevention officer at the Cedar Falls, Iowa, Wal-Mart observed Golinveaux take three boxes of Sudafed cold medicine, which contains pseudoephedrine, a precursor for the manufacture of methamphetamine, from a store shelf and leave without paying. The loss prevention officer brought Golinveaux and her companion, Seth Caldwell, to the store's loss prevention office, a 12-foot by 20-foot unmarked windowless room, where they waited for the police. Two Cedar Falls police officers eventually arrived and spoke with Golinveaux. One officer asked Golinveaux for consent to search her car. Golinveaux refused and requested to speak to a lawyer, stating she "wanted that lawyer thing."

The officer then called his commanding officer, Captain Craig Berte, who came to the scene and was advised of the circumstances, including Golinveaux's request for counsel and refusal to consent to a vehicle search. After Captain Berte entered the loss prevention office, the office contained six to seven people.[2] Golinveaux maintains she felt physically intimidated in the room because she was the only woman present, and although she was unrestrained and seated at a table before the officers, the officers likely were standing. Captain Berte told Golinveaux he knew she had asked for an attorney and he would not ask any questions about the theft. Captain Berte then gave Golinveaux a "dangerous chemical speech," explaining he was concerned about the danger to "hundreds and hundreds" of people if Golinveaux's car contained other

---

[2]Golinveaux, Caldwell, Wal-Mart's loss prevention officer, Captain Berte and two other officers, and possibly the Wal-Mart store manager were in the office.

precursors for the manufacture of methamphetamine.[3]  Golinveaux repeatedly said there was nothing illegal in her car.

About thirty-eight minutes after the first officers arrived, and twenty-three minutes after Captain Berte was dispatched,[4] Golinveaux, on the condition she could be present during its execution, consented to the search of her car for chemicals. Golinveaux apparently led the officers to her vehicle and unlocked the car using a remote control.  The search revealed a black tin containing methamphetamine residue in the center console, a gold pipe containing marijuana residue in a cup holder, a loaded Harrington & Richardson .22 caliber rimfire seven shot revolver under the driver's seat, more drug paraphernalia behind the front seat, and a bloody syringe in the trunk.  After the search, Golinveaux was arrested and, for the first time, given a warning pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).  Golinveaux was eventually transported to jail and booked.  None of the officers involved in Golinveaux's arrest or booking noticed any signs that she was impaired by alcohol or drugs.

On August 26, 2008, a grand jury indicted Golinveaux for being a felon in possession of seven rounds of .22 caliber ammunition while having been previously convicted of three or more violent felony offenses,[5] in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Golinveaux moved to suppress the evidence seized during

---

[3]Captain Berte denies the "dangerous chemical speech" was an impassioned speech designed to be a plea to Golinveaux's emotions.

[4]The record does not indicate when Captain Berte arrived at the loss prevention room.  However, one of the other officers arrived approximately ten minutes after dispatch.

[5]Golinveaux's prior felony convictions included breaking and entering, second degree burglary, burglary, robbery and aggravated battery (including stabbing a police officer), and second degree robbery.

the search of her vehicle, arguing her Fifth and Fourteenth Amendment rights to counsel were violated when Captain Berte continued to question her after she requested a lawyer and Golinveaux's consent to search her vehicle was not given voluntarily. Golinveaux then entered a conditional guilty plea, pursuant to Fed. R. Crim. P. 11(a)(2), reserving her right to appeal all issues raised by the motion to suppress and to withdraw her guilty plea if she prevailed. The district court accepted Golinveaux's guilty plea and denied her motion to suppress, concluding (1) Cody v. Solem, 755 F.2d 1323, 1330 (8th Cir. 1985) ("[A] consent to search is not an incriminating statement."), foreclosed her right to counsel argument; (2) Golinveaux's consent to the search was voluntary; and (3) in any event the evidence was admissible because it would inevitably have been discovered. Golinveaux appeals the district court's judgment as to the voluntariness of her consent and the inevitable discovery doctrine. Because we conclude Golinveaux voluntarily consented to the search, we find it unnecessary to reach the inevitable discovery issue.

## II.    DISCUSSION
### A.    Standard of Review

"[T]he question [of] whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). "We review the factual findings of the district court as to what the parties said or did for clear error; we review the district court's finding that the Fourth Amendment has not been violated de novo." United States v. Serrano-Lopez, 366 F.3d 628, 639 (8th Cir. 2004) (quoting United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc)) (internal marks omitted).

### B.    Voluntariness of Consent

Although a warrantless search presumptively violates the Fourth Amendment, voluntary consent to search is a well-recognized exception to the warrant requirement. See United States v. Parker, 587 F.3d 871, 878 (8th Cir. 2009). "The government bears

the burden to prove by a preponderance of the evidence that consent to search was freely given, but awareness of the right to refuse is not necessary for consent to be voluntary." United States v. Arciniega, 569 F.3d 394, 398 (8th Cir. 2009) (quoting United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001)).

> Factors relevant to the analysis include (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [her] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

Arciniega, 569 F.3d at 398 (internal citations omitted).

The magistrate judge learned Golinveaux's age (50) and educational level (thirteen years), and noted the absence of any evidence Golinveaux suffered from a mental disability. After mentioning methamphetamine residue was found inside the car, the court pointed to the officers' testimony that Golinveaux showed no signs of being under the influence and rejected Golinveaux's argument that she was likely under the influence at the time she gave consent to search. The court found Golinveaux received no Miranda warnings until after the search, but also found Golinveaux had a general understanding of her rights, as evidenced by her request for counsel and lengthy criminal history. Golinveaux allows she "had the personal wherewithal and background to make a voluntary decision about consent to search" and we find no clear error in the district court's findings regarding Golinveaux's personal characteristics.

-5-

Although Golinveaux concededly possessed the personal characteristics necessary to make a voluntary choice, the environment in which she gave consent may have been intimidating. Golinveaux states she was in Wal-Mart's loss prevention office for about an hour. She was not physically restrained. The officers made no promises or misrepresentations to Golinveaux. The magistrate judge pointed out that although there was no evidence Golinveaux was directly threatened, physically intimidated, or punished, she may have been physically intimidated because the officers and Wal-Mart employee or employees were all male and standing during the interview, and Golinveaux was slight, seated, and female. While adopting the magistrate judge's finding that Golinveaux may have been physically intimidated, the district court added that "the environment surrounding [Golinveaux] at the time she gave her consent was not unduly coercive." Our review of the record reveals no clear error in these findings.

Under the circumstances of this case, we conclude Golinveaux's consent to the search of her car was voluntary. At most, Golinveaux was in police custody for thirty-eight minutes before she gave consent to search, and was subject to the possible physical intimidation described above and Captain Berte's "dangerous chemical speech" for less than twenty-three minutes. We do not believe, in such a short time, an experienced criminal such as Golinveaux—particularly given her history of assaulting law enforcement officers—was so overcome by police authority or by Captain Berte's persuasive powers as to make her consent involuntary. Golinveaux's motion to suppress was properly denied.

## III. CONCLUSION
We affirm the district court's judgment.

_____