# Third District Court of Appeal

## State of Florida

Opinion filed December 28, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-928
Lower Tribunal Nos. 13-27417 & 09-28917
_____

**Hansis Antonio Collado A/K/A Luis Jorge Molina,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Stephen T. Millan, Judge.

Bradford Cohen Law, and Bradford M. Cohen (Fort Lauderdale), for appellant.

Pamela Jo Bondi, Attorney General, and Keri T. Joseph, Assistant Attorney General, for appellee.


Before ROTHENBERG, EMAS, and FERNANDEZ, JJ.

ROTHENBERG, J.

The defendant, Hansis Antonio Collado a/k/a/ Luis Jorge Molina ("the defendant"), appeals the trial court's order denying his motion to suppress both the physical evidence obtained on the scene and the defendant's post-Miranda[1] statements made to law enforcement. Because the warrantless entry into the defendant's house was supported by exigent circumstances, the defendant thereafter consented to a search of his house, and his statements were given after he freely and voluntarily waived his Miranda rights, we affirm.

## FACTS

Law enforcement was dispatched to the defendant's residence to investigate an alleged kidnapping based on a 911 call wherein the caller told the 911 operator that a woman was "being held hostage" in the defendant's house. When Officer Jean-Francois responded to the defendant's house, he heard the 911 caller telling another officer that the defendant grabbed her friend by the neck as she was exiting the defendant's house, and thereafter, the defendant dragged her back into the house against her will. During the incident, the 911 caller could hear her friend screaming for her, and she had called 911 because she was afraid for her friend's safety.

Because the defendant had two large pit bull dogs preventing access to the front door, the police called the defendant from a neighbor's house. After placing

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

approximately twenty unanswered phone calls, ten minutes had elapsed, and the officers continued to fear for the victim's safety, they entered the property from the rear and knocked on the back door of the defendant's house. Officer Jean-Francois testified that approximately two minutes after they knocked on the backdoor, the defendant, clad only in boxer shorts, opened the door and stepped outside with his hands up. At that point, Officer Jean-Francois heard a female screaming for help from inside the house.

The defendant was detained. Officer Jean-Francois and Detective Vielman then entered the house and headed in the direction where the screams were coming from. As they made their way to the victim, Officer Jean-Francois observed narcotics and ammunition in plain view.

The officers found the victim lying naked in a fetal position on the bathroom floor crying and saying, "Please help me, please help me." A female officer was called into the house to assist the victim, and a protective sweep of the house was conducted. While the sexual battery detectives were conducting their investigation, and after the victim was transported to the hospital, the defendant was presented with and signed a consent to search form. The consent to search form specifically advised the defendant that he had the right to refuse to consent to a search and the right to demand that a search warrant be obtained prior to any search. Specifically, the consent to search form advised the defendant as follows:

3

**Before any search is made, you must understand your rights**

(1) You may refuse to consent to a search and may demand that a search warrant be obtained prior to any search of the premises or vehicle described below.

(2) If you consent to a search, anything of evidentiary value seized in the course of the search can be introduced into evidence in court.

I HAVE READ THE ABOVE STATEMENT OF MY RIGHTS AND I AM FULLY AWARE OF THE SAID RIGHTS

I HEREBY CONSENT TO A SEARCH WITHOUT WARRANT BY OFFICERS OF THE MIAMI-DADE POLICE DEPARTMENT OF THE FOLLOWING:

301 Bahman Ave.
Opa Locka, Fl. 33054

I HEREBY AUTHORIZE THE SAID OFFICERS TO SEIZE ANY ARTICLE WHICH THEY MAY DEEM TO BE OF EVIDENTIARY VALUE

THIS STATEMENT IS SIGNED OF MY OWN FREE WILL WITHOUT ANY THREATS OR PROMISES HAVING BEEN MADE TO ME.

(emphasis in the original).

Thereafter, a search was conducted and certain physical evidence, including a condom wrapper, the victim's clothing, and the narcotics and ammunition observed by Officer Jean-Francois when he entered the house, was collected, and the defendant was transported to the police station. Prior to any questioning of the defendant at the police station, the defendant was advised of and waived his Miranda rights, after which he provided a statement to the police.

The trial court found that, based on the totality of the circumstances, the officers' entry onto the defendant's property and into the defendant's residence was due to the emergency situation that existed. In Seibert v. State, the Florida Supreme Court held that the "[p]olice may enter a residence without a warrant if an objectively reasonable basis exists for the officer to believe that there is an immediate need for police assistance for the protection of life or substantial property interests." Siebert, 923 So. 2d 460, 468 (Fla. 2006) (citing Rolling v. State, 695 So. 2d 278, 293-94 (Fla. 1997)). Whether an emergency actually existed is immaterial "so long as the officer reasonably believes it to exist because of objectively reasonable facts. The officer's conclusion then may be based on a combination of the 'objective' nature of the circumstances and the officer's 'subjective' perception of those circumstances." State v. Boyd, 615 So. 2d 786, 789 (Fla. 2d DCA 1993); see also Missouri v. McNeely, 133 S. Ct. 1552, 1559 (2013) (holding that the court must consider the totality of the circumstance when determining "whether a law enforcement officer faced an emergency that justified acting without a warrant").

The record supports that law enforcement reasonably believed that exigent circumstances existed. A 911 call was received describing an emergency situation at the defendant's house—a woman "being held hostage." When the police arrived at the defendant's house and spoke to the 911 caller, she told the police that she

saw the defendant drag her friend into the house by her neck and heard her friend calling for help. When the defendant did not answer his phone after approximately twenty calls, the officers continued to fear for the victim's life. The officers then decided to by-pass the pit bulls at the front of the property, and knocked on the back door of the residence. The officers entered the house only after the defendant opened the door and they heard the victim screaming for help. These facts were more than sufficient to establish exigent circumstances warranting entry into the defendant's house. The officers had been dispatched in reference to a kidnapping, and the 911 call that precipitated the dispatch was corroborated by the officers when they arrived at the defendant's house. The 911 caller was at the scene, and she told the police that she had observed the defendant drag the victim into the house by the neck and heard the victim calling for help. Officer Jean-Francois was able to confirm that there was a woman in the house when he personally heard her screams. Under these circumstances, the officers' belief that immediate action was necessary to protect life and to prevent serious bodily injury was reasonable. See Arango v. State, 411 So. 2d 172, 174 (Fla. 1982) (holding that where safety is threatened and time is of the essence, the courts have recognized that "the need to protect life and to prevent serious bodily injury provides justification for an otherwise invalid entry").

6

The subsequent search of the defendant's house, the defendant's arrest, and the statement provided by the defendant were equally lawful. The search was conducted after the defendant freely and voluntarily executed a consent to search form. "[T]he presence of a written consent tends to support the conclusion that the consent was given voluntarily . . . ." Luna-Martinez v. State, 984 So. 2d 592, 600 (Fla. 2d DCA 2008). That is especially so where, as here, the consent to search form clearly and unequivocally advised the defendant that he had the right to refuse to consent to a search without a warrant and that anything seized during the search could be introduced in court as evidence.

Besides the consent to search form, the trial court considered several other factors in determining whether the defendant's consent was freely and voluntarily given. Specifically, the trial court's order reflects that it considered that (1) the defendant was thirty-five years old on the date of his arrest, (2) the defendant had a prior criminal history, (3) the defendant was on probation at the time the consent was given, and (4) the detective who obtained the consent testified that no threats or promises were made to the defendant and that the defendant had voluntarily signed the form consenting to the search of his house. Because the voluntariness of the consent is a question of fact to be determined by the trial court from the totality of the circumstances, see McDonnell v. State, 981 So. 2d 585, 588 (Fla. 1st DCA 2008), declined to follow on other grounds by Rodriguez v. State, 187 So. 3d

7

841 (Fla. 2015), and the record supports the trial court's findings, we find no error with the trial court's order concluding that the consent was freely given and voluntarily made. See United States v. Perry, 703 F.3d 906, 909 (6th Cir. 2013) (finding that the defendant's consent was voluntary despite the fact that she was handcuffed and drunk, and the police were armed and never told her that she could decline to consent); United States v. Arciniega, 569 F.3d 394, 399 (8th Cir. 2009) (finding that consent to search a business and residence was voluntarily given where the defendant was handcuffed after cocaine was found in his vehicle).

The detention and subsequent arrest based on probable cause were also lawful. The initial detention of the defendant was based on at least a reasonable suspicion that a crime had been or was being committed based on the 911 caller's statements and the officers' own observations. The defendant's subsequent arrest was supported by probable cause. The victim was found lying naked in a fetal position on the defendant's bathroom floor crying for help. She told the officers that she had gotten high with the defendant and, although she had originally agreed to have sex with him, the defendant inserted something in her rectum against her will. Officer Jean-Francois had also seen drugs and ammunition in plain view when he entered the residence, which he later seized after the defendant consented to the search of his house. Probable cause therefore existed to arrest the defendant

8

for sexual battery, possession of marijuana, and possession of ammunition by a convicted felon.[2]

Lastly, the trial court's finding that the statements, which were given by the defendant after he was advised of his Miranda rights and executed a Miranda rights waiver form, were freely and voluntarily given is supported by the record. The test of voluntariness of a confession is whether, after a review and consideration of the totality of the circumstances, the confession was freely given or whether it was the product of coercive police conduct. Colorado v. Connelly, 479 U.S. 515, 522 (1986).

The record reflects that the defendant made an exculpatory statement on the scene prior to having been advised of his rights. The State properly stipulated to suppression of that unwarned statement. The trial court however found, and the record supports the trial court's finding, that this unwarned statement was voluntary, and that due to the significant lapse in time between the unwarned but voluntary statement given by the defendant on the scene and his later *Mirandized* statement at the police station, suppression of the later *Mirandized* statement was not required.

The United States Supreme Court in Wong Sun v. United States, 371 U.S. 471, 487-88 (1963), held that evidence must not be suppressed simply because it

---

[2] The defendant was a convicted felon and on probation at the time these offenses were committed.

9

would not have come to light but for the illegal activity of the police. The inquiry, instead, should be focused on whether the evidence the defendant seeks to suppress was obtained by the exploitation of the earlier illegality, and whether the circumstances reflect a sufficient purging of the primary taint. As stated in Wong Sun:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

(citing Maguire, Evidence of Guilt, 221 (1959)).

In State v. Frierson, 926 So. 2d 1139, 1143 (Fla. 2006), the Florida Supreme Court concluded that under such circumstances, the court must consider: (1) the time that has elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. The record in the instant case reflects that the defendant's unwarned statement was made prior to 10:48 a.m. and that his post-Miranda statement to Detective Utset at the police station was made later that evening after 8:57 p.m., thereby evidencing a ten-hour time lapse. There were also several intervening circumstances. The defendant had voluntarily consented to the search of his residence, which resulted in the seizure of incriminating evidence—evidence

10

that not only incriminated the defendant with respect to the sexual battery of the victim, but also with respect to additional crimes. The defendant had also been transported to the police station and placed in an interview room where he was given time to think and consider his situation. Lastly, before anyone questioned the defendant at the police station, he was properly advised of his Miranda rights.

More importantly, there is no evidence of flagrant police misconduct associated with the earlier questioning or that the earlier statement in any way influenced the defendant to waive his rights and agree to speak to the detective at the police station. The record reflects that when the police spoke to the defendant at the scene, the defendant made no incriminating statements. He merely stated that he had picked up the victim and her friend the prior evening, brought them back to his place, but did not remember anything else. No follow-up questions were asked, and the defendant was not asked about and did not offer any statements about the narcotics and ammunition seized from his residence.

Based on the totality of the circumstances, we agree with the trial court that suppression of the voluntary post-Miranda statement was not mandated as "fruit of the poisonous tree." See Lundberg v. State, 918 So. 2d 444, 445 (Fla. 4th DCA 2006) (finding that although suppression of Lundberg's statements made during his interrogation by the police were properly suppressed due to coercion by the police, his subsequent statements made to his girlfriend, which were surreptitiously

11

recorded, were properly not suppressed because the statements to his girlfriend were sufficiently attenuated from the initial illegality).

## CONCLUSION

We affirm the trial court's order denying the defendant's motion to suppress the physical evidence and the defendant's post-Miranda statements. The entry into the defendant's residence was based on law enforcement's reasonable belief of the existence of exigent circumstances necessitating their warrantless entry. The evidence seized was based on the defendant's voluntary execution of a consent to search form, which properly advised the defendant of his right to refuse such consent. The detention of the defendant was based on reasonable suspicion, which ripened into probable cause after the police entered the defendant's house and after the defendant consented to the search of his residence. Lastly, suppressing the defendant's post-Miranda statement was not required where the trial court found, and the record supports the finding, that the post-Miranda statement was sufficiently attenuated from the exculpatory prior statement given by the defendant ten hours earlier at the scene.

Affirmed.