# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-3776

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald David Johnson

*Defendant - Appellant*

_____

No. 18-2455

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald David Johnson

*Defendant - Appellant*

_____

No. 19-1449
_____

United States of America

*Plaintiff - Appellee*

v.

Ronald David Johnson

*Defendant - Appellant*
_____

Appeals from United States District Court
for the District of Minnesota
_____

Submitted: October 18, 2019
Filed: April 13, 2020
_____

Before COLLOTON, WOLLMAN, and KELLY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

A jury convicted Ronald David Johnson of nine counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957. The district court[1] sentenced Johnson to 126 months' imprisonment, ordered him to pay restitution of $2.3 million, and ordered him to forfeit $2.1 million

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

as a personal money judgment. Counsel was appointed to represent Johnson on appeal. In his counseled brief, Johnson argues that certain evidence should have been suppressed, that the government did not prove that venue was proper for seven of the nine wire fraud counts, that his sentence was substantively unreasonable, and that the personal money judgment violates the Excessive Fines Clause of the Eighth Amendment. Johnson filed two *pro se* appeals, challenging the denial of various motions related to the disposition of property and the denial of a motion for a new trial. We affirm.

## I. Background

Johnson founded Indoor RV Parks, LLC, in 2013, and thereafter began soliciting funds from friends and acquaintances. He told investors that he planned to build and manage indoor RV parks, which he described as "a newly created housing concept that accommodates RV parking in a climate controlled building." Johnson told investors that he had purchased land in Williston, North Dakota, where the housing market was tight due to the Bakken Formation's booming oil production. According to Doug Veldheer, an investor and RV dealer from South Dakota, oil workers were staying in motels, in campers on ranches, and in so-called man camps, and thus investors believed that Johnson's business plan "was a good idea . . . a great idea because the need was there for it."

Johnson provided investors with brochures and other informational material on the project. He explained that their investment would be used to build the indoor RV park and to purchase land for additional parks. Investors testified that Johnson was persistent, and his confidence and knowledge set their minds at ease. All told, Johnson obtained $2.1 million from four sets of investors—$200,000 from Veldheer and his wife, $800,000 from Tammie Dietzler, $800,000 from Tom Comstock, and $300,000 from Peter Geisendorfer-Lindgren and his wife.

Johnson did not use the investors' funds to build an indoor RV park or to purchase land near the Bakken Formation, however. He instead redeemed mortgages on his family home located in Corcoran, Minnesota, and his cattle ranch located in Maple Lake, Minnesota. He acquired additional real property in Minnesota—including forty-two acres in Monticello in the name of his cattle company and a seventeen-acre island on Mink Lake. Johnson also bought classic cars, maintained his classic car collection, purchased feed and supplies for his cattle, paid for family vacations, repaid personal loans, and refunded investments from previous failed real estate ventures.

Meanwhile, Johnson sent updates to his investors, claiming that Indoor RV Parks had purchased land in North Dakota and was making progress on construction. He solicited additional funds from the investors. Eventually, investors became concerned about the repeated delays. Johnson claimed to be traveling or sick. He eventually stopped responding to their inquiries.

Johnson was charged with wire fraud and money laundering. The district court denied Johnson's motion to suppress evidence obtained during a search of his truck, adopting the magistrate judge's[2] determination that Johnson had voluntarily consented to the search. The case proceeded to trial. At the close of the government's case-in-chief, Johnson moved to dismiss seven of the wire fraud counts for lack of venue. The district court denied the motion, and defense counsel informed the court that Johnson did not wish to present the venue issue to the jury. The jury found Johnson guilty on all counts.

After Johnson was convicted, the government moved for a preliminary order of forfeiture. It sought a personal money judgment forfeiture of $2.1 million, as well

_____

[2]The Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota, now retired.

as forfeiture of certain assets, including Johnson's island and classic cars. In its motion, the government explained that "Johnson will . . . receive a credit against this [personal money] judgment for the net forfeited value of all assets that are forfeited in connection with this case, including all of the assets that were seized from Johnson and administratively forfeited, after such assets are sold." The district court granted the motion.

At sentencing, the district court determined that Johnson's total offense level was 31, that his criminal history category was I, and that his sentencing range under the U.S. Sentencing Guidelines was 108 to 135 months' imprisonment. Johnson requested a downward variance, claiming that he wanted to repay his debts. The district court denied the request, imposed a sentence within the Guidelines range, and ordered Johnson to pay restitution. The court explained that it previously had ordered Johnson to "pay a personal money judgment forfeiture to ensure that Mr. Johnson does not profit from his crimes."

## II. Discussion

### A. Motion to Suppress

We first address the district court's denial of Johnson's motion to suppress evidence seized during a search of his truck. Because Johnson did not object to the magistrate judge's report and recommendation, we review for plain error the district court's finding that Johnson voluntarily consented to the search of his truck. See United States v. Camberos-Villapuda, 832 F.3d 948, 951 (8th Cir. 2016) (explaining that when a defendant does not object to a "magistrate judge's report and recommendation, we review any challenge to the district court's factual findings for plain error").

According to evidence presented at the suppression hearing, Johnson drove to his cattle ranch in Maple Lake, Minnesota, on the morning of March 22, 2016. He parked his truck and entered the barn. Law enforcement officers had been waiting nearby for Johnson to arrive so that they could execute a search warrant. After they drove onto his property, Johnson exited the barn and met the officers as they approached.

Special Agent Christopher Lester of the Federal Bureau of Investigation gave Johnson a copy of the warrant authorizing a search of the cattle ranch. He explained that a search was being executed simultaneously at Johnson's home. Although Lester told Johnson that he was free to leave, officers were assigned to watch over Johnson during the search. Johnson indicated that he wanted to call his wife, but he did not ask to retrieve his cell phone from his truck. He eventually was allowed to call his wife from an officer's phone.

The warrant did not authorize agents to search Johnson's truck. After officers observed documents and a cell phone through the truck's window, Lester asked for permission to search the truck, telling Johnson that a warrant would be sought if he did not consent. Johnson signed a consent to search form, acknowledging that he gave permission to search the truck, that he had been advised of his right to refuse consent, that permission was being given voluntarily, and that he authorized the agents to seize any items related to their investigation. Agents then searched the truck.

Johnson argues that the search violated his Fourth Amendment rights because his consent was not voluntarily given. Whether "consent is voluntary is a question of fact that must be determined from the totality of the circumstances." United States v. Vinton, 631 F.3d 476, 482 (8th Cir. 2011) (quoting United States v. Arciniega, 569 F.3d 394, 398 (8th Cir. 2009)). "The ultimate question is whether the individual's will has been overborne and his capacity for self-determination critically impaired,

such that his consent to search must have been involuntary." Id. (internal quotation marks, alteration, and citations omitted).

The district court did not plainly err in adopting the magistrate judge's finding that "although Johnson was being watched by deputies while on the property, did not have access to a phone, and was told that a warrant would be sought whether or not he consented to a search of his truck—which was also his only mode of transportation off of the property—his consent was not mere acquiescence to Government authority." R. & R. of Dec. 23, 2016, at 6. Johnson was informed that he had the right to refuse consent to search the truck. "He was not physically restrained, threatened, punished, intimidated, or promised anything for his consent." Id. Although he was not permitted to enter his truck or retrieve his cell phone, Johnson was given an officer's phone so that he could call his wife. In light of these circumstances, the district court did not plainly err in the finding that Johnson's consent was voluntary.[3]

_____

[3]Citing only defense counsel's opening statement at trial, Johnson argues that officers leveraged Johnson's concern for his family to coerce him to sign the consent to search form. According to Johnson's brief:

> At least 15 agents were searching the home, and they went so far as to use a battering ram to break down the front door even though agents knew Mr. Johnson was not there. They isolated his wife and seven children in a room—isolation which would last for four to five hours—during the search.

Appellant's Br. 6. The evidence presented at the hearing on the motion to suppress does not support this statement of facts, however. Although Lester testified that he told Johnson that officers were searching his home, there was no evidence presented regarding the logistics of that search or what Johnson knew about the search when he signed the form.

B. Motion To Dismiss for Lack of Venue

Johnson argues that seven wire fraud counts should have been dismissed because the government failed to prove that venue was proper in the District of Minnesota. We review *de novo* the district court's denial of a motion to dismiss for improper venue, viewing the evidence in the light most favorable to the government. United States v. Banks, 706 F.3d 901, 904-05 (8th Cir. 2013); United States v. Morales, 445 F.3d 1081, 1084 (8th Cir. 2006).

"Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18; see U.S. Const. art. III, § 2; U.S. Const. amend. VI. When offenses are committed in more than one district, venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Whether Johnson committed the challenged wire fraud offenses in the District of Minnesota, so that venue in that district was proper, is a question of fact that the government was required to prove by a preponderance of the evidence. See United States v. Lopez, 880 F.3d 974, 982 (8th Cir. 2018); United States v. Black Cloud, 590 F.2d 270, 272-73 (8th Cir. 1979).

Johnson argues that no reasonable jury could find that the wire transmissions charged in counts 4, 5, 6, 7, and 9 were sent from or received in the District of Minnesota. We disagree.[4] Those counts related to emails sent from Johnson to

_____

[4]There is a circuit split regarding the standard to determine venue in wire fraud cases. See United States v. Pace, 314 F.3d 344, 349-50 (9th Cir. 2002) (holding that "venue may lie only where there is a direct or causal connection to the misuse of wires," meaning that wire fraud counts may be prosecuted in any district in which the relevant wire transmission "originated, passed through, or was received, or from which it was 'orchestrated'" (quoting United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994))); see also United States v. Jefferson, 674 F.3d 332, 368-69 (4th Cir. 2012); United States v. Ramirez, 420 F.3d 134, 145-46 (2d Cir. 2005). But see

Dietzler, Comstock, and Geisendorfer-Lindgren, all of whom testified that they were born and raised in Minnesota and that they lived and worked near the Twin Cities. During the relevant time period, Johnson lived in Corcoran, Minnesota, with his wife and seven children, and maintained an office at his cattle ranch in Maple Lake, Minnesota. Although he sometimes traveled outside Minnesota, bank records indicate that Johnson was in Minnesota on or about the dates he sent each of the emails charged in counts 4, 5, 6, 7, and 9. Moreover, nothing in the record suggests that the Minnesota victims were not in Minnesota when they received the emails from Johnson. Based on the evidence presented at trial, a reasonable jury could find that it was more likely than not that the emails were sent from or received in Minnesota.

Johnson argues that venue in Minnesota was not proper for counts 1 and 2, which related to emails sent from Johnson to Veldheer, the South Dakota businessman. The government responds that it presented sufficient evidence to show that Johnson sent both emails from Minnesota. Johnson sent the first email on February 14, 2013, instructing Veldheer to wire $100,000 to a bank in Blaine, Minnesota. Veldheer did not send the wire, but instead wrote a check, which Johnson picked up in Mitchell, South Dakota, on February 18, 2013. Johnson deposited the check in his Blaine, Minnesota, bank account on February 19, 2013. Bank records showed that Johnson wrote a check at a gas station in Buffalo, Minnesota, on February 12, 2013, and that the check was returned for insufficient funds the next day. Veldheer's testimony and Johnson's bank records, as well as the evidence that

United States v. Pearson, 340 F.3d 459, 466-67 (7th Cir. 2003) (rejecting the defendants' argument that venue was improper because the wire transfer "did not originate in, pass through, or terminate in the Southern District of Illinois," and instead holding that the government proved venue based on the defendants' fraudulent activities in the district, which "provided critical evidence of the 'intent to defraud,' an element of the crime of wire fraud"). We have not decided this issue and do not do so here because we conclude that the evidence was sufficient even under the more rigorous standard.

Johnson lived, worked, and spent most of his time in Minnesota, support an inference that Johnson sent the February 14 email from Minnesota and days later traveled to South Dakota. Johnson sent the second email on May 13, 2013, and bank records showed that he made a series of debit card purchases in Minnesota that day, using the Indoor RV Parks account. The government was not required to prove venue beyond a reasonable doubt, and we conclude that it presented sufficient evidence to allow a reasonable jury to find that Johnson more likely than not sent the February 14 and May 13 emails from Minnesota.

## C. Sentence

Johnson argues that his sentence is substantively unreasonable because the district court failed to adequately consider the need to provide restitution. See 18 U.S.C. § 3553(a)(7) (instructing the district court to consider "the need to provide restitution to any victims of the offense"). Johnson claims that although he did not defraud victims, he nonetheless "wants to repay them for what they lost in his failed business venture." Appellant's Br. 26. Johnson contends that the 126-month sentence renders restitution impossible because he will not be able to repay the debt from prison.

The district court did not abuse its discretion in sentencing Johnson. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (standard of review). Against Johnson's promise to work diligently and repay investors, the court considered the evidence that Johnson "executed several long-term and complicated fraudulent schemes," "avoided responsibility at every turn," repeatedly lied to investors, and had already "moved on to [his] next business venture" when the Indoor RV Parks scheme began to unravel. In deciding to forgo imposing a fine, the district court expressed its intention that Johnson "focus [his] efforts on satisfying [his] significant restitution obligations." The district court thus adequately considered the

need to provide restitution and did not err when it accorded little weight to Johnson's baseless promise of repaying victims. The sentence is not substantively unreasonable.

## D. Personal Money Judgment Forfeiture

Johnson argues that the $2.1 million personal money judgment forfeiture violates the Eighth Amendment prohibition against excessive fines. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." United States v. Bajakajian, 524 U.S. 321, 334 (1998). A punitive forfeiture violates the Excessive Fines Clause if "the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense." Id. at 337. Here, the $2.1 million personal money judgment is directly proportional to the $2.1 million that Johnson took from investors in his wire fraud scheme and does not by itself violate the Excessive Fines Clause.[5] See

---

[5]The personal money judgment in this case was based on the proceeds of the wire fraud scheme. Some of those proceeds were used to purchase the real and personal property that was ordered forfeited by the district court. In a letter submitted after oral argument, the government reiterated its position that Johnson "must, and will, be given a credit against the [personal] money judgment for those assets" because the $2.1 million judgment may be collected only once. Moreover, the government explained that Johnson will be given credit against the personal money judgment for any substitute assets that are ordered forfeited. See 21 U.S.C. § 853(p) (allowing the forfeiture of substitute property if the defendant caused "property subject to criminal forfeiture" to be unavailable for certain reasons); United States v. Nejad, 933 F.3d 1162, 1166 (9th Cir. 2019) (explaining that to enforce a personal money judgment, the government must "identif[y] untainted property that it believes may be used to satisfy a personal money judgment" and then "return to the district court and establish that the requirements of § 853(p) have been met"); see also United States v. Vampire Nation, 451 F.3d 189, 202 (3d Cir. 2006) (explaining that the scope of an *in personam* judgment in forfeiture is limited by the provisions of the applicable forfeiture statutes).

United States v. Bieri, 68 F.3d 232, 238 (8th Cir. 1995) ("In our view, it cannot be excessive in a constitutional sense to take tainted property from criminals when that property is roughly equal in value to the total dollar volume of the criminal activity the criminals conducted or facilitated by using the property, and which property is worth far less than the legislatively authorized statutory fines.").

Johnson contends that the personal money judgment will unconstitutionally deprive him of his livelihood, when it is viewed in light of his sentence and the $2.3 million restitution order.[6]  See United States v. Levesque, 546 F.3d 78, 83 (1st Cir. 2008) (explaining that after completing a proportionality analysis, "a court should also consider whether  forfeiture would deprive the defendant of his or her livelihood" (citing Bajakajian, 524 U.S. at 340 n.15)).  Johnson did not make this argument below, and the district court thus made no findings in this respect.

Johnson asks this court to find that the personal money judgment will unconstitutionally deprive him of his livelihood because he will be in his sixties when he is released from prison, he "does not have a four-year degree, and he made his living through construction work." Appellant's Reply Br. 9.  This we decline to do, for the evidence suggests that a finding to the contrary would not be plainly erroneous.  For example, Johnson presented himself as a tenacious and sophisticated businessman, telling one victim, "I did not get to where I am today by taking no for an answer.  I look to problem solve whenever a problem is proposed, that is just my nature and why my projects succeed."  Johnson maintained that the Indoor RV Parks

_____

[6]Johnson does not challenge the mandatory restitution order.  See 18 U.S.C. § 3664(f)(1)(A) (requiring the district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant"); see also id. § 3663A(a)(1) and (c)(1) (requiring the district court to impose restitution when sentencing defendants convicted of certain crimes, including frauds in which an identifiable victim suffered a pecuniary loss).

scheme was a legitimate real estate venture that failed through no fault of his own. In light of the evidence before the district court, a conclusion that the personal money judgment would render Johnson unable to support himself is not obvious from the record, and we thus find no constitutional error in the decision to order Johnson to forfeit $2.1 million. See United States v. Bikundi, 926 F.3d 761, 796 (D.C. Cir. 2019) (rejecting the defendants' argument that $40 million forfeitures were unconstitutional because they effectively sentenced them "to lifetimes of bankruptcy" and holding that the district court did not plainly err "by ordering forfeitures without considering [the defendants'] ability to pay them"), *petition for cert. filed*, (U.S. Feb. 14, 2020) (No. 19-1020); see also United States v. Smith, 656 F.3d 821, 828-29 (8th Cir. 2011) (holding that a money judgment forfeiture imposed on an indigent defendant did not violate the Excessive Fines Clause and noting that "there is always a possibility that he might legitimately come into money"); United States v. Leahy, 464 F.3d 773, 793 n.8 (7th Cir. 2006) (rejecting the defendant's argument "that it is in some way inequitable for a district court to order restitution and forfeiture in the same amount").

## E. *Pro Se* Appeals

Johnson makes several arguments in two *pro se* appeals, none of which has merit. In his first *pro se* appeal, Johnson challenges the district court's order denying his motion to reconsider the denial a motion to stay of the forfeitures. A district court may stay an order of forfeiture pending an appeal. Fed. R. Crim. P. 32.2(d) ("If a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review."). We review for abuse of discretion a district court's denial of a motion to reconsider. SPV-LS, LLC v. Transam. Life Ins. Co., 912 F.3d 1106, 1111 (8th Cir. 2019). In denying the stay, the district court considered that Johnson's convictions were well-supported by law and evidence, that the forfeited property did not have intrinsic value to Johnson, and that the government might incur significant expense if required to store and maintain the forfeited property during the

-13-

pendency of the appeal. Neither Johnson's motion for reconsideration nor his appellate brief identifies any error in the court's analysis, and the district court thus did not abuse its discretion in denying the motion.

Johnson argues that he was denied due process because the notices of forfeitures were defective. The district court properly rejected this argument because "Johnson received notice of the forfeitures throughout the criminal proceedings against him, including in the superseding indictment issued by a Grand Jury on May 2, 2017, and the preliminary orders of forfeiture issued by the Court on July 19, 2017, and November 17, 2017." D. Ct. Order of Apr. 11, 2018, at 1. Johnson asserts that his limited liability companies did not receive adequate notice. The record clearly contradicts this claim, but even if it did not, inadequate notice to the companies does not affect Johnson's due process rights. See Fed. R. Crim. P. 32.2(b)(4) ("At sentencing . . . the preliminary forfeiture order becomes final as to the defendant."); Fed. R. Crim. P. 32.2(c)(2) ("The defendant may not object to the entry of the final order [of forfeiture] on the ground that the property belongs, in whole or in part, to a . . . third party."); United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005) ("A criminal judgment of conviction that includes a forfeiture count conclusively determines the property rights as between the government and the criminal defendant, but the government does not receive clear title to the forfeited property as against the rest of the world until the government complies with the requirements of [21 U.S.C.] § 853(n)."). Finally, the district court did not err in declining to address the legal interests of the companies in its denial of Johnson's motions to stay and to reconsider. The companies did not file petitions asserting any legal interest in the property, and the time for doing so had expired. See 21 U.S.C. § 853(n)(2) ("Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States . . . may, within thirty days of the final publication of notice or his receipt of notice . . . , whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.").

In his second *pro se* appeal, Johnson challenges the denial of his motion for return of property under Federal Rule of Criminal Procedure 41(g). We hold that the district court did not err in (1) allowing the government to retain property that could be used as evidence, if a new trial were required after appeal; (2) finding that the government returned a Rolex watch and twenty-one firearms to Johnson when the government transferred those items to Johnson's then-retained attorney; (3) finding that Johnson's mother-in-law was not an appropriate transferee to receive Johnson's remaining fifteen firearms, in light of the evidence suggesting that Johnson would attempt to exert influence over her to obtain possession or control of the firearms; (4) and ordering the government to transfer those firearms to a licensed dealer to be sold if Johnson's convictions were not reversed on appeal. See 18 U.S.C. § 922(g) (prohibiting the possession of firearms by felons); Henderson v. United States, 135 S. Ct. 1780, 1786 (2015) ("[A] court . . . may approve the transfer of guns consistently with § 922(g) if, but only if, that disposition prevents the felon from later exercising control over those weapons, so that he could either use them or tell someone else how to do so."); Jackson v. United States, 526 F.3d 394, 396 (8th Cir. 2008) (reviewing the district court's legal conclusions *de novo* and its findings of fact for clear error).

Johnson also challenges the discharge of a mechanic's lien, the refusal to allow him to represent certain corporate entities *pro se*, and the denial of his motion for a new trial. Johnson has not identified any legally cognizable error in the district court's decision to discharge a lien that had been filed by a corporate entity that was created, owned, and controlled by Johnson.[7] See 21 U.S.C. § 853(g) (authorizing the

---

[7]The government argues that we lack jurisdiction over this appeal because Johnson failed to identify the appropriate order in his notice of appeal. Johnson instead identified a filing that the district court had construed as a brief in opposition to the government's motion for an order discharging the mechanic's lien. Because Johnson obviously intended to appeal from the order granting the motion and discharging the lien, we conclude that we have jurisdiction over the appeal. See

district court to "take any . . . action to protect the interest of the United States in the property ordered forfeited"). Despite his argument to the contrary, we did not order the district court to allow Johnson to represent his corporate entities *pro se*. Our July 25, 2018, order merely authorized Johnson to file a *pro se* brief with this court on appeal. Finally, the district court did not abuse its discretion in denying Johnson's motion for a new trial based on newly discovered evidence. See United States v. Meeks, 742 F.3d 838, 840 (8th Cir. 2014) (standard of review).

The judgment is affirmed.

_____

Johnson v. Leonard, 929 F.3d 569, 575 (8th Cir. 2019) ("This court 'construe[s] the notice of appeal liberally and permit[s] review where the intent of the appeal is obvious and the adverse party incurs no prejudice.'" (alterations in original) (quoting Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1058 (8th Cir. 2002))).